## INMAN *v.* SOUTH CAROLINA RAILWAY COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF SOUTH CAROLINA.

No. 86.   Argued November 15, 16, 1888.— Decided January 14, 1889.

A railway company received cotton for transportation as a common carrier giving the owner a bill of lading received and accepted by him which contained a " stipulation and agreement " that the carrier " should have the benefit of any insurance which may have been effected upon or on account of said cotton." While in the carrier's custody the cotton was destroyed by fire. The owner had open policies against loss by fire which covered this loss. These policies all provided for the transfer of the owner's claim against the carrier to the insurer on payment of the loss, and some of them contained further provisions forfeiting the insurance in case any agreement was made by the insured whereby the insurer's right to recover of the carrier was released or lost. In case of loss

these open policies were to be kept good for their full amount by the insured paying to the insurers four per cent of the insured loss, on receiving the amount of it from the insurer. In the present case, instead of making these mutual payments, the insurers adjusted the loss and reinstated the policies, charging the four per cent premium, and the parties agreed that the owner should proceed against the carrier without prejudicing his claim against the insurers, and that the insurers should allow him interest on the claim until collected. The owner brought suit against the carrier. Negligence on the carrier's part, although denied in the pleadings, was not contested at the trial, but the defence rested on the failure to give the carrier the benefit of insurance. *Held:*

(1) That as the defendant's right to the benefit of the insurance depended upon the maintenance of the plaintiff's cause of action, it could not be set up in denial of the truth of the complaint.

(2) That it could not be set up as a counterclaim, because no unconditional payment of insurance had been made to the plaintiff.

(3) That as recovery could not be had against the insurers except upon condition of resort over against the carrier, any act to defeat which was to operate to cancel the insurers' liability, the policies could not be made available for the benefit of the carrier.

(4) That the agreement made with the insurers subsequent to the loss did not amount to a payment.

(5) That the insurers were entitled under their contract to require the insured to proceed first against the carrier, and to decline to indemnify him until the question and the measure of the carrier's liability were determined.

WILLIAM H. INMAN, John H. Inman, James Swann, Bernard S. Clark and Robert W. Inman, copartners in business under the firm name of Inman, Swann & Company, brought suit against the South Carolina Railway Company, in the Circuit Court of the United States for the District of South Carolina, on the 18th of July, 1884, to recover damages for the loss of two hundred and forty-eight bales of cotton, (out of 809 bales,) which the defendant, as a common carrier, had received at Columbia, South Carolina, to be safely carried for certain freight money to Charleston in that State, and there delivered to a connecting carrier to be transported to New York, and which, the plaintiffs averred, the defendant did not safely carry and deliver, but which were, while in the defendant's possession, custody and control as a common carrier, "by the carelessness and negligence of the defendant, its officers, agents and servants, destroyed by fire."

In its answer the defendant admitted the shipment, names of shippers, place of shipment and number of bales shipped; and averred "that at the date of the receipt and shipment of said cotton, bills of lading were given therefor, in which were stated the conditions, stipulations and agreements upon which said cotton should be carried by the railroad company receiving it, and by the connecting roads, which bills of lading and the conditions, stipulations and agreements thereof, were received and accepted by the plaintiffs, and constitute the contract between them and the defendant;" that the cotton was received "subject to the conditions, stipulations and agreements of said bills of lading," and that the two hundred and forty-eight bales were destroyed by fire; but denied, as a first defence, the allegations in respect to negligence; and, as a second defence, stated "that among other stipulations and agreements in said bills of lading under which said cotton so destroyed by fire was carried is the following, to wit: 'And it is further stipulated and agreed that in case of any loss or damage done to or sustained by any cotton herein receipted for during transportation, whereby any legal liability may be incurred by the terms of this contract, that the company alone shall be held responsible therefor in whose actual custody the cotton may be at the time of the happening of such loss or damage, and the company incurring such liability shall have the benefit of any insurance which may have been effected upon or on account of said cotton;' that the plaintiffs had fully insured said cotton so destroyed by fire, in solvent companies, from risks, among which fire was one, and that at the time of the occurrence of said fire said cotton was fully covered by insurance; but that this defendant has not had the benefit of such insurance; nor have the plaintiffs given or offered to give it the benefit of such insurance."

The bill of exceptions states that the plaintiffs, to maintain the issue on their part, examined Bernard S. Clark, (one of the plaintiffs,) who proved the delivery of the cotton to the Greenville and Columbia Railroad, to be carried to the plaintiffs at New York, the receipt of the cotton by the defendant as a connecting carrier, its destruction by fire at Charleston,

on the 29th day of October, A.D. 1883, while in the custody of the defendant, awaiting delivery to the next connecting carrier, and that the value of the cotton, less freight, was $10,717.21; that the form of the bills of lading given to the agent of the plaintiffs by the Greenville and Columbia Railroad Company, the first carrier, was as set out, and contained the clause above quoted.

Upon examination by defendant, the witness testified that plaintiffs had open policies of insurance in the Phœnix, Mechanics' and Traders' and Greenwich Insurance Companies, but had not received any money for the loss occasioned by the burning of the cotton in question; that the insurance companies had signed certain memoranda which witness produced; that witness instructed Mr. Gallagher, an insurance adjuster at Charleston, to bring suit if defendant did not pay; that witness did not know that Gallagher represented the above-named insurance companies, but he had said there would be no expense to plaintiffs; that " by our policies, in case of loss, we have to pay four per cent on that loss, to keep our policy good for twenty thousand dollars all the time. My object is to get this money from the railroad companies and save this four per cent; and $150 average comes in there, and in case I don't get it from them to fall back on my insurers — the insurance companies — and make them pay it. That is the exact reason, and if I don't get it from them the idea is that I will fall back on the insurance company." On re-direct examination the witness testified that the plaintiffs were the owners of the cotton, and did not authorize their agent to take bill of lading with insurance clause, but plaintiffs had received the balance of the cotton and settled for the freight on it under the same bill of lading; that the agent " had authority to take bills of lading for the cotton, but had to accept what the company would give him or no bill of lading."

The policy issued to plaintiffs by the Mechanics' and Traders' Insurance Company on cotton burned bears date 7th September, 1883, and contains the following provisions:

" It is also agreed and understood, that, in case of loss or damage under this policy, the assured, in accepting payment

therefor, hereby and by that act assigns and transfers to the said insurance company all his or their right to claim for loss or damage as against the carrier or other person or persons, to inure to their benefit, however, to the extent only of the amount of the loss or damage and attendant expenses of recovery paid or incurred by the said insurance company ; and any act of the insured waiving or transferring or tending to defeat or decrease any such claim against the carrier or such other person or persons, whether before or after the insurance was made under this policy, shall be a cancellation of the liability of the said insurance company for or on account of the risk insured for which loss is claimed. . . . In event of loss the assured agrees to subrogate to the insurers all their claims against the transporters of said cotton, not exceeding the amount paid by said insurers."

Similar provisions are contained in the policy issued by the Greenwich Company to the plaintiffs on cotton destroyed. The policy issued by the Phœnix Insurance Company on said cotton contained the following provision : "In case of any agreement or act, past or future, by the insured, whereby any right of recovery of the insured against any persons or corporations is released or lost, which would, on acceptance of abandonment or payment of loss by this company, belong to this company but for such agreement or act, or, in case this insurance is made for the benefit of any carrier or bailee of the property insured other than the person named as insured, the company shall not be bound to pay any loss, but its right to retain or recover the premium shall not be affected;" also tho further provision "that in event of loss the insured agrees to subrogate to the insurers all their claims against the transporters of said cotton, not exceeding the amount paid by said insurers."

The memoranda referred to as signed by the insurance companies on the dates named are as follows:

"NEW YORK, *Nov.* 17, 1883.

"To Inman, Swann & Co. :

"In accordance with the provision of this policy the estimated loss sustained by this company of $3667 in consequence

of fire at Charleston, S. C., about Oct. 29th, '83, is hereby reinstated and $114.90 additional premium is charged by this company therefor, it being fully understood and agreed that when the above loss is finally adjusted the amount reinstated and the premium charged shall be made correct.

"Attached to this policy, 21,773."

"NEW YORK, *Dec. 1st,* 1883.

"It is hereby understood and agreed by the undersigned companies insuring Messrs. Inman, Swann & Co., that proofs of loss by fire at Charleston, S. C., of Oct. 29th, 1883, presented this day, are to be considered as filed on November 17th, as all papers and vouchers to prove such loss were forwarded by Messrs. Inman, Swann & Co., with their consent, to the South Carolina R. R. Co. to collect loss from them as common carriers, which, however, is not to prejudice Messrs. Inman, Swann & Co.'s claim against the undersigned insurance companies."

"NEW YORK, *Jan.* 18*th*, 1884.

"The undersigned companies having been notified by Messrs. Inman, Swann & Co. of loss by fire at Charleston, S. C., on or about Oct. 29th, '83, and proofs of loss having been presented to the South Carolina R. R. Co. direct, on Nov. 17th, '83, with consent of said insurance companies, which, however, it was agreed upon should not prejudice the assurer's claim against them, the claims having been agreed upon as filed with insurance companies on said Nov. 17th, in case the railroad should refuse to pay, and the claim being due on Jan. 17th, 1884, Messrs. Inman, Swann & Co. will still use every effort to collect the claim direct, and the undersigned insurance companies hereby agree to pay them (six) 6 per cent interest from January 17th, '84, to the time when claim is collected. This agreement, however, is not to prejudice their claim against the undersigned insurance companies."

It was conceded upon the argument that the bills of lading were dated October 18th, October 24th, October 25th and October 27th, 1883, and were signed for the Columbia and

Greenville Railroad Company and the companies constituting the through line, of which defendant was one, "separately but not jointly;" and that the policies of insurance were dated August 29th, September 6th and September 7th, 1883, and expired August 29th, 1884, and contained these clauses: "The total amount of each and every loss, less $150 to be deducted in lieu of average, shall be paid within thirty days after receipt of proofs of loss;" and "that, in the event of loss, the assured agree to pay the insurers additional premium or premiums at the rate of four per cent on the amount of such loss or losses, and this policy is thereby to be reinstated and in force to the full amount of $20,000, unless either party desire the cancelment of same."

At the request of the defendant and subject to plaintiffs' exceptions the court gave to the jury the following instructions:

"First. That the bill or bills of lading under which the cotton of plaintiffs in this case was transported by the defendant constituted the contract of the parties, and the plaintiffs are bound by the stipulation that the defendant company 'shall have the benefit of any insurance that may have been effected upon or on account of said cotton.'

"Second. That the plaintiffs, before they can recover against defendant here, must show that they have performed their part of this contract by proving that they have given to the South Carolina Railway Company the benefit of the insurance, or that they have been ready to perform their contract by tendering such benefit, and that the same has been refused.

"Third. That if the jury find that an agreement was made between plaintiffs and their insurers by which the insurers waived proofs of loss and admitted the claim of plaintiffs to be due by them on the 1st of January, 1884, and plaintiffs agreed to give time upon said claim to the insurers and meantime to press the claim for the cotton against the South Carolina Railway Company, defendant, in consideration of the payment to plaintiffs by their insurers of 6 per cent interest per annum on said admitted claim from 1st January, 1884, then plaintiffs cannot recover, and verdict must be for defendant."

The plaintiffs requested the following instructions, which the court refused, and plaintiffs excepted.

"First. That the stipulations in the bills of lading giving the defendant the benefit of insurance effected by the plaintiffs is unreasonable, contrary to public policy, and the duties and obligations imposed by law upon carriers, and therefore void.

"Second. That if the stipulation in the bills of lading under which the cotton of the plaintiffs was to be transported by the defendant giving to the carrier the benefit of insurance, is valid, then such stipulation only entitles the defendant to such insurance upon payment by it of plaintiffs' loss, unless the plaintiffs have already been paid by the insurer.

"Third. That if the stipulation in the bills of lading under which plaintiffs' cotton was to be transported by the defendant giving to the carrier the benefit of plaintiffs' insurance is valid, then such stipulation only entitles the defendant to such insurance as it is in the hands of the plaintiffs, and if the policy is void or unproductive this is no defence, and the plaintiffs are entitled to recover in this action.

"Fourth. That if the stipulation in the bills of lading under which plaintiffs' cotton was to be transported by the defendant giving the carrier benefit of insurance effected by plaintiffs is valid, then no legal obligation arose therefrom that the plaintiffs should effect valid insurance, and if such insurance is invalid this is no defence to plaintiffs' action.

"Fifth. That as the plaintiffs, under the stipulation in the bills of lading giving the carrier benefit of the insurance, may or may not have insured as they please, the defendant takes such insurance, if effected, subject to all infirmities, and the same constitutes no defence to plaintiffs' action.

"Sixth. That the carrier does not lose his character as carrier by reason of a stipulation giving him the benefit of insurance by the shipper or owner, and that as carrier he is primarily liable for loss or damage, if not arising from causes exempted by law or his contract, and if the defendant desires the benefit of plaintiffs' insurance it must first pay the loss sustained by them.

" Seventh. That the defendants, under the bills of lading in question, are not exempt from loss by fire, as such exemption, under said bills of lading, only applies to the carrier by water."

*Mr. George A. Black* for plaintiffs in error.

*Mr. William Allen Butler* and *Mr. Theodore G. Barker* for defendant in error.

I. In South Carolina, the State, as it happens, in which the contract in this case was made, and where, so far as defendant was concerned, it was to be performed, it has been always held, that the bill of lading, given by a railroad company to a shipper, constitutes the contract between the parties, and recently thus : " The bill of lading is the contract between the shipper and the company, by which the company agrees to transport and deliver beyond its own lines and the terms and conditions of the contract regulate and determine the duties and obligations of the contracting parties. The signature of the shipper is not necessary to establish his assent to the terms of a bill of lading." *Piedmont Manufacturing Co.* v. *Columbia and Greenville Railroad Co.*, 19 So. Car. 353. In New York it is held that, " On contract for through transportation exemptions inure to connecting carriers although not so expressly provided." *Manhattan Oil Co.* v. *Camden and Amboy Railroad and Transportation Co.*, 54 N. Y. 197. " The acceptance of the carrier's receipt creates a contract according to its terms between him and the shipper." Hutchinson on Carriers, 240 ; *Bank of Kentucky* v. *Adams Express Co.*, 93 U. S. 174.

II. The consideration of the contract, upon which the liability of defendant to pay in case of loss of the cotton by fire depended, was the giving by plaintiffs to the defendant the benefit of the insurance, which had been effected upon, or on account of the cotton shipped.

It is a case of a " promise for a promise " " or of mutual promises, where the plaintiffs' promise is executed, but the thing they had agreed to perform was executory." " If the

consideration be executory, the plaintiff cannot bring his action till the consideration be performed." 1 Tidd Pr. 435. Here the plaintiffs had promised, that " in case of any loss or damage done to or sustained by any cotton whereby any legal liability may be incurred by the terms of the contract, the company incurring such liability shall have the benefit of any insurance, which may have been effected upon or on ac count of the said cotton." ·

By the terms of the contract, then, the defendant company incurred such "legal liability" the moment when the loss occurred to the cotton. According to the plaintiffs' promise, defendant then became, *eo instanti*, entitled to have from the plaintiffs the benefit of the insurance, which had been effected. The plaintiffs were, then, under the executed promise to give to defendant the benefit of such insurance, and the thing to be done — the giving the benefit — was executory ; and according to the established principle of law above stated, the plaintiffs cannot bring their action till the consideration be performed. See also *Pordage* v. *Cole*, 1 Wms. Saunders, 319. This is what the French law calls " a *commutative* contract, involving mutual and reciprocal obligations, where the acts to be done on one side form the consideration for those to be done on the other," and "it would seem to follow," says Judge Story, " upon principles of natural justice, that, if they are to be done, at the same time, neither party could claim a fulfilment thereof, unless he had first performed, or was ready to perform, all the acts required on his own part." *Hyde* v. *Booraem*, 16 Pet. 169.'

III. The stipulations in the bills of lading giving the defendant the benefit of insurance effected by the plaintiffs are " not unreasonable, contrary to public policy and the duties and obligations imposed by law upon carriers, and therefore void," as is claimed in plaintiffs' first exception.

These exceptions to the like stipulations, in similar bills of lading to those proven in this case, were met and answered, in the recent decision of this court in *Phœnix Insurance Company* v. *Erie Transportation Company*, 117 U. S. 312.

IV. The plaintiffs have, by their own proof, shown that

they have been virtually paid, or have been so absolutely secured to be paid, by the insurance companies as actually to occupy the position of lenders of the insurance money to their insurers, upon an investment, bearing six per cent interest, from the date, when the insurance money was, in an account stated in writing, acknowledged to be due and promised to be paid, unconditionally, by the insurance companies to the plaintiffs. The only condition of the agreement of settlement is, that the plaintiffs shall sue the carrier, and use every effort to collect the claim from the defendant. This, however, it is stipulated between them, is not to prejudice the plaintiffs' claim against the insurance companies. They are, therefore, estopped from saying that they have not been, in effect, paid by the insurers. The stipulation of the bills of lading that the defendant (carrier) shall have the benefit of that insurance, in the language of the decision of this court, above quoted, " does prevent either the owner himself " (the plaintiffs here) " or the insurer from maintaining an action against the carrier upon any terms inconsistent with the stipulation."

V. Even if the policy could be shown to be void or unproductive the plaintiffs are not entitled to pronounce judgment to that effect upon it. The courts alone, upon an issue legally framed between proper parties, could so declare; until such judgment, it must be presumed to be valid and productive.

But, by the proof in this case, these plaintiffs are absolutely estopped from saying, that these policies, which the insurers, since the loss, have recognized as valid, under which they have accepted proofs of loss, and have agreed to pay the loss, are void. So, by the same proof, they are conclusively estopped from saying that they are unproductive.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

The defendant, a corporation of South Carolina, received the cotton in question for safe carriage from the point of connection with the Columbia and Greenville Railroad Company to Charleston, S. C., and delivery to the steamship company at

that port. The loss occurred by fire, in Charleston, before the obligation was discharged, and this is an action as on the case, based on defendant's breach of duty, as a common carrier, in failing to safely carry and deliver.

To secure care, diligence and fidelity in the discharge of his important public functions, the common law charged the common carrier as an insurer; but the rigor of the rule has been relaxed so as to allow reasonable limitations upon responsibility at all events, to be imposed by contract. We have, however, uniformly held, that this concession to changed conditions of business cannot be extended so far as to permit the carrier to exempt himself, by a contract with the owner of the goods, from liability for his own negligence. And as in case of loss the presumption is against the carrier, and no attempt was made here to rebut that presumption, the defendant's liability because in fault must be assumed upon the evidence before us.

The cause went to judgment, however, in favor of the defendant upon its second defence, which was sustained by the rulings of the Circuit Court brought under review upon this writ of error.

That defence set up the clause in the bills of lading providing that "the company incurring such liability shall have the benefit of any insurance which may have been effected upon or on account of said cotton;" and it was averred that the plaintiffs had fully insured the cotton against the risk of fire, but that defendant had not had the benefit of such insurance, nor had the plaintiffs given or offered to give to it such benefit.

If this bill of lading had contained a provision that the railroad company would not be liable unless the owners should insure for its benefit, such provision could not be sustained; for that would be to allow the carrier to decline the discharge of its duties and obligations as such, unless furnished with indemnity against the consequences of failure in such discharge. Refusal by the owners to enter into a contract so worded would furnish no defence to an action to compel the company to carry, and submission to such a requisition would be presumed to be the result of duress of circumstances, and not

binding. But the clause in question bears no such construction, and obviously cannot be relied on as in itself absolving the company from liability, for by its terms the benefit of insurance was only to be had when a legal liability had been incurred, and in favor of "the company incurring such liability." Since the right to the benefit of insurance at all depended upon the maintenance of plaintiffs' cause of action, the fact of not receiving such benefit could not be put forward in denial of the truth or validity of their complaint.

If, on the other hand, the contention of the defendant may be regarded as in the nature of a counterclaim by way of recoupment or set-off, then the question arises as to the extent of the stipulation, assuming it to be otherwise valid, and what would amount to a breach of it.

By its terms the plaintiffs were not compelled to insure for the benefit of the railroad company ; but if they had insurance at the time of the loss, which they could make available to the carrier, or which, before bringing suit against the company, they had collected, without condition, then, if they had wrongfully refused to allow the carrier the benefit of the insurance, such a counterclaim might be sustained, but otherwise not.

The policies here were all taken out some weeks before the shipments were made, although, of course, they did not attach until then, and recovery upon neither of them could have been had, except upon condition of resort over against the carrier, any act of the owners to defeat which operated to cancel the liability of the insurers. They could not, therefore, be made available for the benefit of the carrier. Nor have the insurance companies paid the owners. It is true that after the loss had been incurred, the companies signed certain memoranda, by which the face of the insurance was reinstated, proofs of loss waived, and provision made for postponing the question of indemnity until the owners, if the carrier refused to pay, had used effort to collect, without prejudice to the owners' claims against the insurance companies. But this falls far short of the equivalent of payment, and, indeed, under the terms of these policies, payment itself would have been subject to such conditions as the companies chose to impose. Although in-

the order of ultimate liability, that of the carrier is in legal effect primary and that of the insurer secondary, yet the insured can, in the absence of provisions otherwise controlling the subject, insist upon proceeding, under his contract, first, against the party secondarily liable, and when he does so is bound in conscience to give to the latter the benefit of the remedy against the party principal; but these insurers could, under their contracts, require the owners to pursue the carrier in the first instance and decline to indemnify them until the question and the measure of the latter's liability were determined. This they did, and to their action in that regard the defendant is not so situated as to be entitled to object.

In our judgment the second defence, in any aspect in which it may be considered upon this record, cannot be maintained, and it follows that the action of the Circuit Court was erroneous.

*The judgment will be reversed, and the cause remanded, with directions to the Circuit Court to award a new trial.*