BRADLEY v. LEHIGH VALLEY R. CO.

(Circuit Court of Appeals, Second Circuit. March 26, 1907.)

No. 154.

1. SHIPPING—LIABILITY FOR LOSS OF CARGO—EXEMPTION UNDER HARTER ACT.
     A carrier by water can only avail himself of the exemptions from liability for errors of management and navigation provided by Harter Act Feb. 13, 1893, c. 105, § 3, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946], by affirmative proof that the vessel was seaworthy at the beginning of the voyage, or that due diligence had been used to make her so, and such affirmative proof cannot be supplied by inferences or presumptions.
     [Ed. Note.—For cases in point, see Cent. Dig. vol. 44, Shipping, § 492.
     Statutory exemption of shipowners from liability, see note to Nord-Deutscher Lloyd v. President, etc., of Insurance Co. of North America, 49 C. C. A. 11.]

2. SAME.
     Under a contract of affreightment to carry wheat to the port of New York and there deliver it on board a vessel for export, where the wheat on reaching that port was loaded into a canal boat for transport and delivery to the designated vessel by the carrier's tug, the carrier is liable for its loss through the sinking of the canal boat, whether resulting from unseaworthiness or from the negligence of the towing tug or of the master of the boat; its seaworthiness not being affirmatively shown.

3. CARRIERS—LIABILITY FOR LOSS OF GOODS—STIPULATION FOR INSURANCE.
     A bill of lading provided that, in case of loss or damage to the goods, the carrier should have the benefit of any insurance for or on account of the owner, and should be subrogated to its rights before any demand on account of such loss or damage should be made. The shippers obtained a policy of insurance on the goods, conditioned that it should not inure directly or indirectly to the benefit of any carrier or bailee by stipulation in bill of lading or otherwise, and that it should be null and void to the extent of any amount recovered from any carrier or bailee. The goods having been lost by the carrier, the insurer advanced to the shippers an amount equal to the insurance, taking a receipt reciting that it was received "as a loan without interest, and repayable only to the extent of any net recovery we may make from the carriers responsible for the loss." Held, that the provision of the bill of lading did not obligate the shippers to insure for the benefit of the carrier, nor, if they did insure to effect, such insurance as would protect the carrier, but that they were free to procure the insurance they did; that the advance made by the insurance company was not a waiver of the conditions of its policy, and did not extinguish the liability of the carrier nor constitute a defense to an action against it to recover for the loss.

4. PAYMENT—EFFECT OF PAYMENT BY THIRD PARTY—DISCHARGE OF OBLIGATION.
     Payment of an obligation of another by a third party does not discharge it as between the original parties unless the payment is made and received with the intention that it shall do so.
     [Ed. Note.—For cases in point, see Cent. Dig. vol. 39, Payment, §§ 6, 136.]

Appeal from the District Court of the United States for the Southern District of New York.

Appeal in admiralty from a decree in personam (145 Fed. 569) adjudging the respondent liable for the loss caused to a cargo of wheat by the sinking of the canal boat upon which the wheat was being transported.

H. G. Ward, Wm. S. Montgomery, and Robinson, Biddle & Ward, for appellant.

Lawrence Kneeland and Black & Kneeland, for appellee.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

WALLACE, Circuit Judge. The libelant is the assignee of Nourse & Co., who were the shippers of the cargo of wheat which was damaged by the sinking of the canal boat Dean. The wheat, when damaged, was in the course of transportation by the Lehigh Valley Railroad Company as a common carrier under a through contract of affreightment by which it was to be carried from Toronto, Canada, to the port of New York, and there be delivered on board a steamship for further transportation to Leghorn, Italy. It had been received by the railroad company at Communipaw, N. J., and there laden on board the canal boat Dean, and before daylight on the morning of January 23, 1903, the company's tug Mercedes took the Dean, together with the canal boat Igo, to tow them to the steamship, which was then lying in her slip at the foot of Forty-Second street, Brooklyn.

The libel proceeds upon two theories—one that the company was liable because the loss occurred by the negligent towage of the company's tug, and the other that it was liable as a common carrier for a breach of its obligation to safely transport and deliver the wheat. The court below was of the opinion that the loss was caused by the negligence of the tug in bringing the Dean into contact with the ice. The proofs show that, when the towage service was begun, the tide was flood, and the ice which had previously obstructed the channels had been carried up the North and East rivers so that the channels were free, but considerable ice remained in the slips, where the wind kept it from the action of the tide. When the tug and canal boats reached the slip at Forty-Second street, the vessels were stopped outside, and the tug pushed the canal boats into the slip slowly through the ice, until the master of the tug thought there was risk in pushing them further because of the thicker ice, and the tug was about to leave, when the master of the Dean insisted that she should be pushed further into the slip. The master of the tug, after objecting, yielded, and the tug pushed her further in. That there was some risk in doing this is apparent, because before leaving the Dean the master of the tug cautioned the master of the Dean to measure her water, in order to see if her condition was satisfactory. The latter measured, and reported that she was all right. About an hour later the master of the Igo, which boat was then lying alongside the Dean, noticed that the Dean was lower in the water than she had been, and he called her captain, and said, "Your boat has got about four inches

of water in her." The captain answered: "That's about right." About an hour later he again called the attention of the latter to the Dean's condition, and then she was found to be filling with water so fast that the pumps could not remove it. She sank soon after.

The Dean was an old boat, having been built in 1874. She had been rebuilt in 1888, and was overhauled somewhat in 1893. No evidence of her seaworthiness was given, except that on some previous occasion she had passed inspection and been classified by the underwriters as fit to carry grain, but at what time this was did not appear.

In the view which we take of the facts, it is not material whether the towage service was negligently performed or not. So far as appears, the tug would have left the Dean in a safe and proper place, and would have fully performed her towage service if the master of the Dean had not for his own convenience insisted upon having his vessel pushed further into the ice. If the tug was negligent, the railroad company as her owner was, of course, responsible. If the tug was not negligent, the company was responsible for the breach of its duty as a common carrier to carry the wheat safely on the Dean, because the disaster was caused in part at least by the conduct of the captain of the Dean. The contention of the appellant that this conduct was an error in the management of the vessel, and because of the provisions of the Harter act (Act Cong. Feb. 13, 1893, c. 105, § 3, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]) it was relieved of responsibility as a common carrier, cannot be sanctioned. There was no affirmative evidence to show that the Dean was seaworthy at the beginning of the voyage, or even at a time approximately near the beginning of the voyage. The carrier can only avail himself of the exemptions from liability for errors of management and navigation, provided by section 3, by affirmative proof that the vessel was seaworthy at the beginning of the voyage, or that due diligence had been used to make her so. This affirmative proof cannot be supplied by inferences or presumptions. The Wildcroft, 201 U. S. 378, 26 Sup. Ct. 467, 50 L. Ed. 794. The evidence in the present case failed to comply with the requirements of the rule.

It is contended for the appellant that the court below erred in overruling its defense founded upon a stipulation contained in the bill of lading under which the wheat was being transported. That stipulation was:

"That in case of loss or damage to the goods the carriers shall be given the benefit of any insurance for or on account of the owner of said goods, and shall be subrogated in their rights before any demand shall be made upon them in respect to such loss or damage."

There was an insurance on the wheat in favor of Nourse & Co., which had been effected with the Sea Insurance Company under a policy, which, among others, contained the following conditions:

"It is warranted by the insured that this insurance shall not enure directly or indirectly to the benefit of the carrier or other bailee by stipulation in bill of lading or otherwise, and that this policy shall be null and void to the extent of any amount paid or recoverable from any carrier or bailee."

After the loss occurred, and before the assignment of their demand by Nourse & Co. to the libelant, the insurer advanced to Nourse &

Co., $3,992.85, a sum equal to the amount of the loss, and took a receipt therefor, which recited that the amount had been received "as a loan without interest, and repayable only to the extent of any net recovery we may make from the carriers responsible for the loss." The appellant insists that this transaction should be regarded as a payment of the loss, and operated to extinguish any right of Nourse & Co. to recover therefor. Treating the transaction as a payment of the loss, it did not discharge the liability of the railroad company upon the theory of extinguishment. Payment of an obligation of another by a third party does not discharge it as between the original parties, unless the payment is made and received with the intention that it shall do so. Bleakley v. White, 4 Paige (N. Y.) 654; Muller v. Eno, 14 N. Y. 605; King v. Barnes, 109 N. Y. 289, 16 N. E. 332. The real question is whether the transaction defeated the right of subrogation of the railroad company secured by the stipulation in the bill of lading.

When the transaction took place, the insurance policy had become void at the election of the insurance company, because of the breach of the warranty. Although the insurance company was entitled to insist upon its right to treat its contract as nugatory, it could, if it chose, waive that right and treat the policy as a valid and existing one. By making an unconditional payment of the loss, it would have waived the breach, in the absence of some agreement or understanding to the contrary between the parties to the transaction. But the parties were at liberty to agree that the payment should not be unconditional, or that it should not operate as a waiver, or that it should be regarded as a loan or as a gratuity. The receipt indicates plainly that they did not intend the transaction to be an unconditional payment, or regarded as a payment of the loss in any sense. Its form was carefully devised for that purpose. It is industriously framed to show that the money advanced was not advanced in payment of the loss; and apparently to deprive the railroad company from obtaining any benefit from the insurance, and enable Nourse & Co., or some assignee or appointee of theirs, to recover the loss from the railroad company for the benefit of the insurance company. It is not important that Nourse & Co. may not have expressly consented to receive the payment as one not made by the insurance company in recognition of its liability. It suffices if the insurance company did not intend to recognize its liability. As is pointed out by Chief Justice Shaw, in Farlow v. Ellis, 81 Mass. 231, a waiver is the relinquishment of a right which otherwise the party making it would have enjoyed, and the voluntary choice on his part not to claim the benefit is of the essence of the waiver; and whether there has been a waiver is a question of fact, depending upon the intention of the party against whom the waiver is asserted. That the insurance company did not intend to waive its right to treat the insurance as nugatory can hardly be questioned. The struggle between carriers and insurers to escape ultimate loss when insured cargo has been damaged or destroyed while in the custody of the carrier has resulted in efforts by each to cast the burden upon the other by the insertion of astute provisions in their respective contracts with the shippers or owners of cargoes, and by availing themselves of every technical ad-

vantage to secure the benefit of their own provisions. To infer that an insurance company has intentionally foregone such an advantage would be to indulge in a violent and preposterous presumption.

Notwithstanding the stipulation in the bill of lading Nourse & Co. were under no legal obligation to effect any insurance for the benefit of the railroad company. The carrier is undoubtedly entitled by a stipulation in his contract to reserve to himself the benefit of any insurance which the shipper may effect or may have effected on the goods, although he thereby shifts from himself to the insurer the loss for which he is primarily responsible; but any stipulation which requires the shipper to procure insurance for the benefit of the carrier in case of loss is void. Inman v. South Carolina Railway Co., 129 U. S. 139, 9 Sup. Ct. 249, 32 L. Ed. 612; The Hadji, 22 Blatch. 235, 20 Fed. 875. The same reasons which forbid the enforcement of a stipulation requiring the shipper to insure for the benefit of the carrier would forbid the enforcement of one requiring him when he does effect insurance to procure such as will protect the carrier. The shipper cannot be circumscribed in his liberty to make such a contract with the insurer as he chooses. If he sees fit to make one which may be worthless to the carrier, it is his right to do so. The present stipulation does not purport to circumscribe that right. The contract which Nourse & Co. saw fit to make with the insurance company was framed so as to render the insurance worthless to the railroad company at the option of the insurer. Unless the insurance company waived that option, and made the advance to Nourse & Co., as a payment for insurance in recognition of its liability, Nourse & Co. never obtained any insurance, and there was none to which any right of subrogation under the stipulation in the bill of lading could attach when the present action was brought. We conclude that there was no defense to the action arising from the stipulation.

It is argued for the appellant that an erroneous basis for the computation of the loss was adopted by the court below in view of the stipulations in the bill of lading. We regard the case as controlled by the decisions of this court in The Styria, 101 Fed. 728, 41 C. C. A. 639, and the Manitou, 127 Fed. 554, 63 C. C. A. 109, and not distinguishable from these cases by the slight difference in the language of the stipulation.

The decree is affirmed, with interest and costs.