## VIRGINIA–CAROLINA CHEMICAL CO. v. CHESAPEAKE LIGHTERAGE & TOWING CO. et al.

(Circuit Court of Appeals, Second Circuit. January 18, 1922.)

No. 53.

1. **Admiralty ⬦⟿10—Contract by carrier to insure for benefit of cargo owner not maritime.**

A contract by a carrier to obtain insurance for the benefit of the cargo owner is not maritime, and a suit for its breach is not within the admiralty jurisdiction.

2. **Insurance ⬦⟿156(1)—Right of cargo owner to sue on policy to carrier.**

To entitle a cargo owner to maintain a suit on a marine policy issued to the carrier, he must, under the terms of the contract, have become the insured, when the cargo went on board the carrier's vessel.

3. **Insurance ⬦⟿479—Cargo owner held not entitled to recover on policy to shipowner.**

A marine policy issued to a shipowner covered any property on which the insured had agreed with the shipper to provide insurance, and also its legal liability where it had not so agreed, but provided that it should not cover "where the assured, or any carrier or other bailee, has insurance which would attach if this policy had not been issued." *Held*, that a cargo owner could not recover on such policy for loss of cargo as "the assured," where it had other insurance, nor through liability of the shipowner where the latter was not charged with any fault.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by the Virginia-Carolina Chemical Company against the Chesapeake Lighterage & Towing Company and Fireman's Fund Insurance Company. Decree for libelant, against the Insurance Company, and it appeals. Reversed.

Libelant either imported or bought from the importer certain "kainit." The steamship Main, which brought the kainit, arrived at Baltimore, and libelant employed the Chesapeake Company to take the kainit upon one of its barges for carriage to Seawell, Md. The laden barge, according to the libel, "sprang a leak and sunk * * * as a result of perils of the sea," whereby libelant's cargo became a total loss. Except for the above quotation, the libel contains nothing that can be called an allegation of fault against the Chesapeake Company.

Libelant did, however, allege that when the lighterage contract was made it was agreed with Chesapeake Company "that all goods lightered [including, of course, this kainit] while on the lighters of Chesapeake, etc., Company, were to be insured by the [Chesapeake Company] up to the sum of $6,000, provided there was no prior insurance" thereon. In point of fact there was before and at the time when the kainit was laden on Chesapeake Company's barge, and apparently for some months prior to that date, insurance attaching (according to its terms) to said kainit. It was expressed in a policy issued by Federal Insurance Company to the concern which apparently sold the kainit to libelant, and was in favor of said vendor corporation "on account of whom it may concern," and it concerned the libelant apparently as holder of bills of lading for the kainit at the time it was unladen from the Main and put aboard Chesapeake Company's barge.

This insurance, available to libelant, covered the kainit from the time of shipment on the Main until its delivery at destination, and specifically included "all risks of lighterage"; but such general assumption was limited by the following exceptive provision: "Warranted by the assured free from any

⬦⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

liability for merchandise in the possession of any carrier or other bailee, who may be liable for any loss or damage thereto, and for merchandise shipped under a bill of lading containing a stipulation that the carrier may have the benefit of any insurance thereon, and that any insurance granted herein shall not cover where any carrier or other bailee has insurance (whether prior or subsequent in date to this policy) which would attach if this policy had not been issued."

At and before the time when Chesapeake Company agreed to carry libelant's kainit, it had a policy in the Fireman's Fund Insurance Company, which by its terms covered "merchandise and property on which the (Chesapeake Company) have agreed with the shippers to provide insurance, also their legal liability in cases where they have not agreed to provide insurance." This Fireman's Company policy applied specifically to the barge which carried the kainit, and contained the exceptive provision: "Warranted by the assured that any insurance granted herein shall not cover where the assured or any carrier or other bailee has insurance which would attach if this policy had not been issued."

Upon the loss of the kainit libelant received from the Federal Company what would have been its loss under that company's insurance policy, but only "as a loan, and repayable only to the extent of any net recovery [Federal Company] may make from any carrier, bailee, or others on account of loss [of the kainit], or from any insurance effected by any carrier, bailee or others on said" kainit. The receipt for this loan contained the usual agreement on the part of libelant to prosecute suits as required by Federal Company, but "at the expense and under the exclusive direction and control" of said Company.

Thereupon this action was begun, with allegations as above set forth only against Chesapeake Company, but with an averment that "by reason of the said policy of insurance taken out [with Fireman's Company] said Fireman's Company is liable to it under and by virtue of the terms of its said policy with" Chesapeake Company. The Chesapeake and Fireman's Companies appeared by the same proctors, denied the allegation last quoted, but admitted that, when Chesapeake Company agreed to carry said kainit, it further agreed that it "would be insured by the Chesapeake Company while on its lighters, provided said cargoes were not otherwise insured."

At trial the only evidence beside the two policies of insurance and the receipt for the loan made to libelant by Federal Company was a stipulation that whatever agreement to insure was made by Chesapeake Company was evidenced only by talk between a representative of libelant and of Chesapeake Company, and that if such representatives were called as witnesses each would swear exactly as their respective employers had pleaded. On this record the trial court gave decree to libelant as against the Fireman's Insurance Company only, but dismissed the libel as against Chesapeake, etc., Company. Whereupon the Fireman's Fund Insurance Company appealed.

William Harison, of New York City, for appellant.

Harrington, Bigham & Englar, of New York City (D. Roger Englar and Vine H. Smith, both of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). Whether libelant ever intended to allege any wrong or breach of contract on the part of Chesapeake Company as carrier of the kainit is doubtful; but it is certain that no proof exists of any dereliction by that company in respect of the carriage. Consequently the carrier as such is without negligence, and as no effort was made to charge Chesapeake Company as insurer merely because it carried, the cases from Inman v. Railway Co., 129 U. S. 128, 9 Sup. Ct. 249, 32 L. Ed. 612, through Pennsylvania Co. v. Burr, 130 Fed. 847, 65 C. C. A. 331, and Bradley v. Lehigh, etc., Co., 153 Fed. 350, 82 C. C. A. 426, to Luckenbach v. McCahan, etc.,

Co., 248 U. S. 139, 39 Sup. Ct. 53, 63 L. Ed. 170, 1 A. L. R. 1522, do not apply. It is true that this shipper had the kind of insurance, and pursued the procedure on settlement, followed by the shippers in the cases cited; an insurance and procedure successfully designed to prevent a carrier, liable on his contract of carriage, from escaping liability by a bill of lading agreement whereby such carrier (in effect) obtained the benefit of shipper's insurance. Phœnix Ins. Co. v. Erie, etc., Co., 117 U. S. 312, 6 Sup. Ct. 750, 29 L. Ed. 873.

But Chesapeake Company is, by a section of decree below whereof no one complains, exonerated, not only from liability as carrier, but from all liability whatever. This suit, like all but a negligible fraction of admiralty proceedings on the instance side, must rest on either a marine tort or a maritime contract. Tort is eliminated as above shown; therefore the suit as against Chesapeake Company must have proceeded on the theory that said company agreed on due consideration to insure —i. e., procure insurance available to—libelant in respect of the kainit. And acquiescence in discharge of Chesapeake Company by the lower court must mean that said company (in libelant's opinion) fulfilled whatever obligation it undertook, by procuring or maintaining the Fireman's Fund policy; therefore this suit is by the libelant as one insured by the Fireman's Company, and on no other ground can it be maintained in the admiralty.

The form has been dwelt upon as important, for in substance this litigation is obviously a sort of case stated by two insurance companies, with a request that the courts decide which of the two has succeeded in maneuvering the loss upon the other. Of such an effort it may be said in the recent phrase of Holmes, J., that "neither side would be likely to inspire enthusiasm." Oelwerke v. Erlanger, 248 U. S. 521, 39 Sup. Ct. 180, 63 L. Ed. 399, and no court should or can do more than inquire whether under the pleadings and evidence the libelant has made out a case within the jurisdiction.

[1] Again libelant must consider that Chesapeake Company fulfilled whatever promise to insure it ever made; for, if the suit be regarded as one to recover damages for a failure to insure or procure insurance, admiralty has no jurisdiction; the contract is not maritime. Marquardt v. French (D. C.) 53 Fed. 603, approved United, etc., Co. v. New York & Baltimore, etc., Line, 185 Fed. 386, 390, 107 C. C. A. 442.

[2] Further it must be regarded, in order to establish jurisdiction, that libelant became the insured under the Fireman's Fund policy the moment the kainit went on Chesapeake Company's barge (Southern, etc., Co. v. Merchant's, etc., Co. (D. C.) 179 Fed. 133, 136, and case cited), and that as such insured libelant can sue in its own name (The Sidney, 23 Fed. 88, 93), even though the Fireman's Fund policy specifically provides, "Loss, if any, payable to" Chesapeake Company. On this last point we express no opinion, but assume it for argument's sake.

[3] Having thus made the assumptions necessary to admiralty jurisdiction, we are clear that libelant as the insured under Fireman's Fund policy cannot recover, for that policy specifically provides that

it does not cover "where the assured has insurance which would attach if this policy had not been issued," and libelant had exactly that kind of insurance under the Federal policy. If, however, the Chesapeake Company be regarded as the insured, and this suit be an effort to get at the Fireman's Fund over Chesapeake's shoulder, then (assuming the technical propriety of the attempt) it was wrong to dismiss the libel as against Chesapeake Company.

This brings us to what we think the crux of the case, and on an appeal which is a new trial, we may inquire whether the evidence warranted finding in substance that Chesapeake Company ever agreed to procure or furnish insurance to libelant. Libelant said the promise was to insure "provided there was no *prior* insurance," while Chesapeake Company said it only so agreed if the kainit "were not *otherwise* insured." The two statements are far from meaning the same thing. *Prior* insurance is a technical term, concerning which much fine-spun arguing can be, and has been made; but "otherwise insured" is a plain expression, and no one can doubt that, when some agreement was made, libelant was otherwise insured. One oath is as good as the other; the probabilities are all with Chesapeake Company, if its promising employee had the slightest acquaintance with the intricacies of marine insurance. It is certain that by no fair preponderance of evidence did libelant prove the controverted fact that Chesapeake Company agreed to insure by any form of words that would or could enable shipper's insurers to transfer their burden to carrier's insurers.

Where the carrier is guilty of fault, the cases first above cited (and many others) show just how his insurers (if any there are) can be made to bear the burden of that fault; notwithstanding any effort yet exhibited in the reports, on the carrier's part and embedded in the contract of carriage, to escape the consequences of fault. This is an endeavor to put on a carrier, who committed no fault, a burden assumable only by express contract. Such contract is (1) not proven; but (2) if the Fireman's policy be the fruit of the contract, libelant can only sue thereon as the assured—a legal position which defeats its occupant.

Decree reversed, without costs, and cause remanded, with directions to dismiss the libel, without costs.