## NEBRASKA CO-OPERATIVE CREAMERIES, Inc., v. DES MOINES TRANSPORTATION CO.
### No. 961.

District Court, S. D. Iowa, Central Division.
July 27, 1936.

Robt. J. Bannister (of Stipp, Perry, Bannister & Starzinger), of Des Moines, Iowa, and Arthur W. Klein, of Chicago, Ill., for plaintiff.

Rex Fowler (of Bradshaw, Fowler, Proctor & Fairgrave), of Des Moines, Iowa (John S. Lord, of Chicago, Ill., of counsel), for defendant.

DEWEY, District Judge.

The above-entitled action at law came on for hearing in open court on its merits at Des Moines, Iowa, on June 30, July 1 and 2, 1936, evidence was introduced, oral arguments had, and the case submitted on very extensive and comprehensive briefs filed by the parties which the court has carefully considered.

The action is at law, and the parties by written agreement have waived a trial by

jury and consented that the same may be heard and determined by the trial court.

While perhaps not required, the court feels that the requests for findings of fact filed by the parties do not completely reflect the entire controversy, and the following facts are found as a basis for the conclusions of law and the ultimate decision on the merits of the case:

### Facts.

Some time in February, 1935, one Birney Baker, president of the Des Moines Transportation Company, defendant herein, went to Omaha to discuss and negotiate with the officers of the Nebraska Cooperative Creameries, Inc., designated herein as plaintiff, with reference to the carriage by defendant of shipments of butter and eggs from Omaha to New York City.

The defendant was first employed to carry such shipments at an agreed freight rate of $1.30 per hundred on shipments that might be assigned to it. The first agreement was to the effect that the carrier would transport for this rate such shipments of butter and eggs to New York City and deliver to the consignees in "door delivery." Later the plaintiff was told that this could not be done, and in the oral arrangement it was finally agreed that defendant would accept for transit at plaintiff's place of business in Omaha, Neb., dairy and poultry products destined to New York City, and that plaintiff would pay defendant therefor the transportation charges of $1.30 per hundred less cartage charges that were to be deducted because of the inability of the shipper to make door deliveries in New York and a further deduction from the transportation charges to pay or reimburse plaintiff for providing its own insurance coverage to protect it against any or all loss of or damage to the shipment while en route to destination, and that the defendant would not be required to continue to carry coverage insurance for the protection of itself or for the plaintiff.

Following this agreement, the plaintiff did take out insurance to cover any loss on its goods and merchandise while in transit from assured's plants to points in the United States or Canada, and after subsequent shipments were made plaintiff company deducted from its bills for freight 1¾ per cent. of the total charges as payments on such insurance. The insurance policy so procured however contained the following provision: Section 12: "Warranted that the Assured has not and will not enter into any special agreement releasing or limiting the liability of any truckmen or other carrier." Also as follows: "*Subrogation.* If this Company shall claim that the loss or damage was caused by the act or neglect of any person or corporation, * * * this Company, shall on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the Assured for the loss resulting therefrom, and such rights shall be assigned to this Company by the Assured on receiving payment." Also in said insurance policy was a provision to the effect that the insurer might institute legal proceedings in the name of the assured.

Although the defendant may have intended to adjust its rates with its own insurance company to release it from the payments of premiums on the shipments of the Nebraska Co-operative Creameries, Inc., it did not do so.

At the time of the making of this agreement and at all times thereafter the defendant Des Moines Transportation Company was a common carrier and its agreement for transportation was to transport the butter and eggs of the plaintiff from Omaha to New York City. However, at that time the defendant did not and could not, as it did not have the proper state licenses, transport in trucks east of Chicago and it had been its custom in transporting shipments east of Chicago to deliver for such continuous transportation any such cargo intended for shipment east of Chicago to the Motor Way Transit Company. This situation, however, was not known to the plaintiff at the time the agreement for transportation was made, and it was the agreement and understanding of the parties that the defendant would transport the cargoes of the plaintiff from Omaha to New York and be responsible for the shipments to the place of destination in New York City.

Some time subsequent to these oral agreements and arrangements defendant began at irregular intervals to carry butter and eggs destined for New York for plaintiff, and it and the Motor Way Transit Company successfully hauled some 10 or 12 shipments to New York City before the loss of the shipment in question occurred. Shipment No. 709 left Omaha on April 5, 1935, carrying 253 tubs of butter, 11 car-

tons of butter, and 58 cases of eggs. All of the shipments, including shipment No. 709, were made under a uniform form of bill of lading, and as each shipment left the plant at Omaha it was filled out, signed on behalf of the plaintiff and signed by the driver on behalf of the defendant. As this procedure had been continued during all of these shipments the court is satisfied that the plaintiff had full knowledge that the shipments were being made under the written agreements contained in these bills of lading and that the bill of lading for shipment No. 709, in so far as it affected and could be applied to a shipment of cargo by truck, constituted a binding agreement upon the parties.

This form of bill of lading was a form approved by the Interstate Commerce Commission and generally used by railroads and was a form evidently that had been procured from the Missouri ·Pacific Railroad Corporation in Nebraska, but the printed name of that corporation was scratched out and the name of the Des Moines Transportation Company inserted therein, and as thus reading it recites:

"Received, * * * at Omaha, Nebr from Nebr Co Op Creameries Inc the property described below, * * * consigned, and destined as indicated below, which said company * * * agrees to carry to its usual place of delivery at said destination, if on its own road or its own water line, otherwise to deliver to another carrier on the route to said destination. * * *

"Consigned to Order of Nebr Co-Op Creameries Inc

"Destination NY NY

"Notify Dairy & Poultry Co Ops Inc C/O S&S Trucking Co.

"At Merchants Refrig. Co. Beach Str NY NY.

"Route Des Moines Transportation Co."

This is followed by a description of the cargo and the notation: "Due New York Tuesday Morning April 9th."

Under the contract terms was the following: "Sec. 2. (a) No carrier is bound to transport said property by any particular train or vessel, or in time for any particular market or otherwise than with reasonable dispatch. Every carrier shall have the right in case of physical necessity to forward said property by any carrier or route between the point of shipment and point of destination."

This shipment was safely carried by the defendant to Chicago, where it was turned over to the Motor Way Transit Company. A few days later it is claimed by the defendant that somewhere within the borders of the state of New York the entire shipment was hijacked and has never been recovered. There was no direct evidence in the trial as to this reason for the loss, but it was agreed that the shipment never reached New York and was lost in transit. Some time later demand was made upon the defendant to pay the loss.

The Connecticut Fire Insurance Company, being the insurer of plaintiff, advanced to it under plaintiff's policy the sum of $5,000 by way of a loan, the receipt providing that said amount should be repayable out of any amounts recovered by it from the Des Moines Transportation Company for loss of its shipment of produce. The total value of said shipment was $6,548.74.

### The Issues.

Plaintiff proceeded upon two theories in its petition:

First. That the defendant was liable because the loss occurred from a breach of its obligation as a common carrier to safely transport and deliver the cargo.

Second. That the defendant was liable for the loss of the cargo because the loss occurred by the negligence of the defendant in not carrying the cargo to New York according to its agreement, but misrouted and misdirected it by delivering the same to the Motor Way Transit Company in Chicago; and "that by reason of said conversion and wrongful delivery by the defendant said defendant became liable to pay to complainant the loss sustained by complainant thereby."

Defendant in its answer to these charges claims in division 1 that the goods were lost while in the possession of a connecting carrier, so that the defendant was not liable for the same; in division 2, that the carriage was under an oral agreement as to insurance, above set forth, and thereby the plaintiff expressly waived any claim against the defendant on account of the loss or damage suffered to the goods while in transit; in division 3, it claims that under the facts plaintiff is estopped to maintain this action; and in division 4, that the

856

plaintiff has been fully reimbursed for any loss or damage sustained by it from its insurer the Connecticut Fire Insurance Company of Hartford, Conn.

In reply, the plaintiff claims that any oral agreement relied upon by the defendant, if made, is illegal and void, as it would be contrary to public policy to limit its liability as a common carrier.

### The Law.

The general principles of law in so far as they affect this situation are in general covered by the case of Inman v. South Carolina Ry. Co., 129 U.S. 128, 139, 9 S.Ct. 249, 252, 32 L.Ed. 612, which is a leading case on the subject, wherein it is stated: "To secure care, diligence, and fidelity in the discharge of his important public functions, the common law charged the common carrier as an insurer, but the rigor of the rule has been relaxed so as to allow reasonable limitations upon responsibility at all events, to be imposed by contract. We have, however, uniformly held that this concession to changed conditions of business cannot be extended so far as to permit the carrier to exempt himself, by a contract with the owner of the goods, from liability for his own negligence; and as in case of loss the presumption is against the carrier, and no attempt was made here to rebut that presumption, the defendant's liability, because in fault, must be assumed upon the evidence before us."

■ As to count 2 of plaintiff's petition, from the facts found I am unable to say that the plaintiff has established or raised a presumption of negligence from the mere fact that the defendant did not carry the cargo in its own trucks from Omaha to New York but delivered them to a connecting carrier at Chicago and thereby breached its agreement. There is nothing in the oral or written agreement that required the defendant to transport the cargo in any particular truck or by any particular route or by any particular agency other than by truck transportation. The bill of lading upon which the plaintiff relies provides that the carrier should have the right in case of physical necessity to forward the property by any carrier or route between the point of shipment and destination. Certainly there would not be any negligence in delivering the cargo to another agency for transportation at Chicago when the defendant was unable by lack of permits to use the highways east of Chicago.

■ The oral agreement, as alleged by defendant and as above found by the court, however, did not purport to cover specifically a loss of the cargo by negligence, but had to do entirely with the question of insurance, and, under the authority above quoted, I can see no reason why this would not be a reasonable limitation of liability.

There is no doubt of the rule that any stipulation which requires the shipper to procure insurance for the benefit of the carrier in case of loss is void, yet the carrier is undoubtedly entitled to the benefits of a stipulation in his contract wherein he may reserve to himself the benefit of any insurance which the shipper may effect or may have effected on the goods, although he thereby shifts from himself to the insurer the loss for which he is primarily responsible. Bradley v. Lehigh Valley R. Co. (C.C.A.2) 153 F. 350.

■ Had the shipper carried out its oral agreement with the defendant and procured the insurance without the warranty and for the benefit of both the shipper and the carrier, the latter would have been subrogated to the rights of the shipper against that insurance company. As we have seen, however, it did not do this, and the question then arises, Did the failure of the Nebraska Co-operative Creameries, Inc., to carry out its part of the oral agreement relieve the carrier from both this common-law liability as an insurer and its liability for negligence, if any has been established? It seems to me that the plaintiff by this agreement either waived its rights to claim as against the defendant for any such liability, or by reason of such agreement and the payment and retention by the plaintiff of the insurance premiums it is now estopped from instituting or maintaining this action as against the defendant.

Probably a better theory for defendant is that the oral agreement was not intended to release any liability. The primary liability for the loss remained with the carrier, and it is subject to such liability in this case as it cannot, because of public policy, contract to limit liability for its negligence. But as the shipper breached its contract, the carrier is entitled to an offset as damages for the full amount of the loss.

■ The advancement by the Connecticut Fire Insurance Company of the $5,000 to

the plaintiff under the agreement contained in the trust receipt does not constitute a payment, and the defense contained in division 4 of defendant's answer is unavailing. Inman v. South Carolina R. R. Co., supra; Luckenbach v. McCahan Sugar Co., 248 U.S. 139, 39 S.Ct. 53, 63 L.Ed. 170, 1 A.L.R. 1522.

The bill of lading must be construed as affecting a shipment by truck, and as so construed the bill of lading does not limit the liability of the defendant to a transportation to Chicago only but, both by the written and oral agreements, the defendant bound itself to make the transportation itself from Omaha to New York City. Tubize Chattilon Corporation v. White Transportation Co. (D.C.) 6 F.Supp. 15.

In its written and oral arguments the plaintiff claims that the Constitution, statutes, and decisions of the state of Nebraska prohibit a limitation in any way of the liability by a common carrier, and that the oral agreement relied upon by the defendant, if made, was void under the statutes of Nebraska, being the place where the contract was made. The short answer is that such statutes of Nebraska attempting to limit a liability in this shipment would be a direct burden upon interstate commerce and would be invalid in so far as it affected the shipment and question here presented, as such a burden on interstate commerce is entirely within the jurisdiction of the national government.

At the close of the evidence both parties moved for a directed verdict, and the motion of the plaintiff is overruled and the plaintiff excepts.

Also there was filed by each of the parties in due time requests for findings of fact and conclusions of law. For the reasons assigned above, plaintiff's requests for findings of fact are sustained as to items 1, 2, 3, and 5, and overruled as to item 4. Both parties except.

Plaintiff's requested conclusions of law are sustained as to items 1, 2, and 3, and overruled as to items 4 and 5. Both parties except.

Defendant's requests for findings of fact are sustained as to items 1, 2, 3, 4, 8, and item 9 in so far as it requests a finding of fact that there was an oral agreement entered into and that such oral agreement is as found and set out above in this opinion, items 10, 11, 12, 16, 20, 21, 22, 25, and 26,

and overruled as to the remaining items in said defendant's requests for findings of fact, to wit, items 5, 6, 7, 13, 14, 15, 17, 18, 19, 23, and 24. Both parties except.

Defendant's requests for conclusions and declarations of law are sustained as to items 1, 2, 3, 4, and 6, and overruled as to items 5, 7, 8, 9, 10, and 11. Both parties except.

### Final Judgment.

I find in favor of the defendant Des Moines Transportation Company as against the plaintiff with judgment against the plaintiff for costs. Plaintiff Nebraska Co-operative Creameries, Inc., excepts.