PAULINE COHEN, next friend, etc., *vs.* M. SHYER & others.

April Term, 1873.

NEXT FRIEND—PAUPER OATH.—A person ought not to be permitted to file a bill as next friend of an infant without giving security for costs.

GUARDIAN, WHEN ALLOWED TO TRENCH ON THE CAPITAL OF HIS WARD.— A guardian will not be permitted to break in upon the capital of his ward without, upon proper proceedings, showing the necessity, and obtaining the sanction of the court either in advance, or in ratification.

SAME, SAME.—And the better opinion is that such expenditures will not be allowed after they are made unless good reason is shown why the court was not applied to for its sanction in advance.

*Jno. A. Campbell*, for complainant.

*H. H. Harrison*, for defendants.

THE CHANCELLOR :—The bill in this case is filed by Pauline Cohen, "next friend of her minor children Ann, Michael and Rachel Cohen," to compel the defendant, M. Shyer, to settle his accounts as guardian, and to have an allowance out of the *corpus* of the estate of these infants for their support and maintenance, upon the ground of its "absolute necessity." And yet, strange to say, the only contest with the guardian grows out of his claim for expenditures beyond the income of his wards, growing, as he insists, out of the same "absolute necessity." The bill is so drafted, moreover, as to make it exceedingly doubtful whether the infants are before the court at all, and has been, contrary to all rule, permitted to be filed under the pauper law without security for costs. The pauper law is only intended for persons directly interested in a suit about to be instituted. It can have no possible application to a party who undertakes to act as next friend for infants, because the very object of allowing a third person to assume that position is to have somebody liable for costs in the event the proceedings are unnecessary. Atk. 570 ; 1 Hogan, 41 ; 1 Paige 178.

So it is, however, the bill was filed, the defendant answered, the *corpus* of the fund has been repeatedly trenched upon under the proceedings, and the cause finally heard as to the matter of contest with the guardian. The decree

rendered recites that it appeared to the court that something is due from the defendant to "the complainant's minor children," and it is referred to the clerk and master to take and state an account with the guardian, in which "he will charge the respondent, Shyer, with all the money he received, adding interest, and credit him with all he paid out upon satisfactory vouchers, except such sum or sums as he may have paid in excess of the accrued interest." The decree adds : "And if the clerk and master should find that the respondent as guardian paid for the use of his wards a sum or sums in excess of the interest arising from their money in his hands, this fact will especially be reported with all necessary particulars to show the exact amount paid out for each ward over and above interest, and the necessity for it, if there was a necessity ; but the clerk and master as to his enquiry upon this point will be strictly confined to such necessity as humanity, decency, and personal safety will dictate, and have no reference whatever to social standing or conventional rules obtaining in society."

It is very obvious, from the wording of this decree, that the Chancellor has only authorized the clerk and master to allow vouchers to the extent of the income, leaving for his own consideration, after the master's report of any expenditure in excess of income, the question whether such expenditure should be allowed. The reference was intended to give the defendant the opportunity of showing by proof the extent of such expenditure "and the necessity for it." And upon the evidence adduced and the clerk and master's report, the Chancellor expected to decide whether the guardian should be allowed for such expenditure, or any part of it.

Upon this reference no proof seems to have been offered, the defendant relying, apparently, upon the vouchers themselves, and the circumstances of the case as developed in the record. The clerk and master has reported the account in two ways, first allowing the guardian all the expenditures claimed by him ; and, then, allowing vouchers only to the

extent of the income. His report upon the question of "necessity" is in these words: "All the disbursements of the guardian seem to have been dictated by necessity, and I report that the same should be ratified by the court." The first exception to the report is that it is not on this subject in compliance with the decree. And this is undoubtedly true, though I can easily see that the wording of the decree, which is meagre and not explicit in its directions on the point, has misled the clerk. He has construed the decree as submitting the question of necessity to him, and he has construed the word "necessity" as covering all that was necessary. But this was not the intention of the Chancellor. He intended to confine the allowances out of the *corpus* to matters of strict and absolute necessity on the part of the ward, and to reserve the extent of such allowance for further consideration upon the facts being fully reported. The clerk has only expressed an opinion without reporting any facts, nor does it appear that the defendant has furnished him with any proof on the subject.

The general rule of equity is, that a guardian will not be permitted, of his own accord, to break in upon the capital of his ward. The express sanction of the court must be obtained either in advance, or in ratification of the act, upon proper proceedings showing clearly the necessity. *Walker* v. *Wetherell*, 6 Ves. 474. In the matter of *Bostwick*, 4 J.C. 100; *Williamson* v. *Berry*, 8 How. 495, 531; W. & T. Lead. Cases Eq. 267. And the better opinion is that such expenditures will not be allowed after they have been made, unless good reason is shown why the court was not applied to for its sanction in advance. *Downey* v. *Bullock*, 7 Ire. Eq. 102; *Villard* v. *Chorin*, 2 Strob Eq. 40; *Holmes* v. *Logan*, 3 Strob Eq. 31; *Beeler* v. *Dunn*, 3 Head, 91; *Hester* v. *Wilkinson*, 6 Hum. 215, 219.

No reason is assigned by the defendant in this case why he did not apply to the court before breaking into the capital of his wards, and for this reason, if the question were now to be decided by me, I should refuse to make any allow-

ance. But the very able Chancellor who preceded me has already, upon full hearing, come to the conclusion that some allowance should be made, for otherwise he would have refused a reference. He takes care, however, to limit the "necessity" to such expenditures "as humanity, decency, and personal safety [of the ward] dictate," and gives the defendant the opportunity to make the proof. The burden is, by all the authorities, upon him, and nothing must be left to conjecture. It will never do to sanction expenditures beyond income voluntarily made by guardians, unless the necessity is made clear by the plainest testimony.

No such proof has been made in this case, and yet the master's report shows that nearly a third of the little estate of two of these minors has been swept away in two years, one of them being, according to the testimony, at the time only five or six years old and the other 15 or 16. It is obvious, that no such expenditure for children of these ages should be tolerated, the tender years of one of them showing it unnecessary, and the age of the other showing that she could have been apprenticed or put to service. The expenditures ought strictly to be disallowed. *Phillips* v. *Davis*, 2 Sneed, 524.

But there is evidence in this record, although not taken by the defendant, nor referred to by the master, upon which the court has seen proper to make an allowance for each of these minors out of the *corpus* of the estate. Upon examination of this proof, and the report of the clerk thereon, I think it probable that had the defendant taken the necessary evidence he could have shown the "necessity," within the meaning of the Chancellor's decree, of some expenditures, but certainly not to the extent of his actual disbursements. It is probable also that the defendant and his counsel were misled as to what was incumbent upon them by the construction put upon the decree by the master. A careful examination of the whole record has, moreover, satisfied me that the guardian has been more sinned against than sinning. There is not the least testimony, worthy of notice, tending

to impeach his conduct. He has manifestly been led into making the expenditures by the importunities and necessitous circumstances of the mother and, so called, next friend of the children. Upon the whole, therefore, I have concluded to allow the guardian one-half of the expenditures reported by the clerk beyond the income, and, overruling the exceptions, will direct him to recast the account in short upon this basis, and will then affirm it. The clerk and master will collect the balance, if any, then found to be due from the guardian, for the benefit of the minors.