# Roos, Appellant, *v.* Philadelphia, Wilmington & Baltimore Railroad Company.

*Common carriers—Railroads—Insurance—Subrogation.*

Where a shipper of goods has voluntarily insured them, and after their loss has collected the amount of the policy, and the bill of lading provided that the carrier, if liable for the loss through negligence, should have the full benefit upon any insurance upon the goods, the carrier may deduct from the total amount of the loss, the amount of insurance money which the shipper had received.

Where a shipper of goods has voluntarily insured them, and has collected the amount of insurance, and has receipted to the insurance company for the proceeds of the policy as a loan to be returned to the company if the amount of the loss should be recovered from the carrier, the question whether the payment by the insurance company was really a loan, or an adjustment of the loss, is, in an action by the shipper against the carrier, for the jury, and a verdict reached by deducting the amount of the insurance from the total loss, will be sustained.

Argued Jan. 22, 1901.   Appeal, No. 259, Jan. T., 1901, by plaintiff, from judgment of Superior Court Oct. T., 1900, No. 85, affirming judgment of C. P. No. 4, Phila. Co., March T., 1894, No. 1096, in case of Helen V. Roos v. Philadelphia, Wilmington & Baltimore Railroad Company.   Before McColLUM, C. J., MITCHELL, FELL, BROWN, MESTREZAT and POTTER, JJ.   Affirmed.

Appeal from Superior Court.   See 13 Pa. Superior Ct. 563.

The opinion of the Superior Court by ORLADY, J., was as follows :

The plaintiff delivered certain household goods to the Northern Central Railroad Company at Baltimore, Maryland, for transportation to Greenville, New Hampshire.   The Northern Central Railroad Company received the freight charges and delivered the goods to the defendant company, a connecting carrier, but while in transit to their destination on the latter road they were damaged by the derailing of the car in which they were being transported.   At the time the goods were received by the Northern Central Railroad Company, it delivered to the consignor a nonnegotiable shipping receipt which provided that

it would " transport the herein named merchandise with all due care and dispatch to its destination or to the terminus of its line in the direction of destination, and tender it to the consignee or connecting carrier, . . . and in case of damage through the negligence of the carrier's servants shall pay a part assessment of same, the carrier to have the full benefit of any insurance that may have been effected upon or on account of said goods."

The Insurance Company of North America insured the plaintiff in the sum of $2,000 against damage to the goods while in transit. After the delivery of the damaged goods to the plaintiff and before an adjustment was made of the claim for damages against the defendant company, she negotiated with the insurance company and received of it $809.52, for which she receipted in the following form:

" PHILADELPHIA, Oct. 4, 1893.

" Borrowed and received from the president and directors of the Insurance Company of North America of Philadelphia, Pennsylvania, the sum of eight hundred and nine and 52–100 ($809.52) dollars, being a loan pending the investigation and determination whether the loss on sundry articles of household furniture (per schedule on file in the office of this company) damaged and destroyed by derailment of cars at Red Mill crossing, near Elkton, Maryland, on the Philadelphia & Baltimore Railroad, shipped from Baltimore on or about July 15, 1893, bound for Greenville, New Hampshire, is a loss for which the carrier should be held liable, and if the carrier should be held liable, the undersigned agrees to return to the said president and directors the amount thus loaned, when and to the same extent same shall be recovered from the carrier."

The railroad company contended that the claim for damages was much more than it should rightly be, and that the company was entitled, as a credit on the claim when properly adjusted to the amount which the plaintiff had received from the insurance company. It urged that that money ($809.52) was paid by the insurance company, not as a bona fide loan as it purported to be, but as an adjustment and payment of an ascertained loss under its policy. The jury returned a verdict for the plaintiff in the sum or $883.81, and she brings this appeal.

It is settled that in Pennsylvania a common carrier may limit

its liability by the terms of a special contract, but it is equally well settled, as an exception resting on grounds of public policy, that by such a limitation a common carrier may not be relieved from liability for its own negligence: Penna. R. R. Co. v. Raiordon, 119 Pa. 577; Allam v. Penna. R. R. Co., 183 Pa. 174.

It was a voluntary act on the part of the plaintiff to secure insurance in any amount on the goods, and the damage being shown to be of a nature to make the insurance company liable to her, after payment to her of such damages the insurance benefit clause in the shipping receipt became operative in favor of the railroad company.

The policy of insurance is not printed, and we assume that it was intended to cover loss or damage to the goods while in the hands of the carrier. In this transaction the money paid was called a loan; and whether it was a loan or an adjustment of the loss is the vital question at issue.

Under the contract the carrier was to have the benefit of any insurance effected on the property, and the plaintiff could not claim from the carrier and the insurance company a greater amount than the damage she really suffered. The learned trial judge instructed the jury, viz: " That was a lawful contract; the railroad company had a right to make the agreement, and if you are of the opinion that the insurance company paid $809 as an adjustment of the loss, but with a string to it, nevertheless it was a payment, and it ought to be deducted out of the $1,700, and the insurance company, which is in the business of taking risks like this, ought to be held. If you do not believe, however, that the insurance company's payment was an adjustment and the payment of a loss, but was a bona fide loan, outside and independent of any insurance matter, then it ought not to be deducted."

Under the signed admission of counsel it was proper to receive in evidence the borrowed and received receipt, so as to show the receipt of the money by the plaintiff, and, with the other evidence in the case, to determine the character of that payment. It did not stand as the only evidence of the payment. The insurance company, speaking through its agent, said: " We took her loss to be $1,700; we had $2,000 insurance on property valued at $4,200, thereabouts, and loaned her $809.52 on the proportion of seventeen to the amount of the value." It

was a significant fact that the amount paid was the exact sum total of her claim against the insurance company. The counsel of the insurance company was selected by the plaintiff to secure the whole loss from the carrier, and that company furnished witnesses to support her claim. If the carrier could be made to bear the whole burden, the insurance company would be entirely relieved from the risk it assumed, and the stipulation in the insurance benefit clause in the shipping receipt would be rendered valueless to the carrier through an unfair combination of the owner and the insurance company, which would be manifestly unjust and unreasonable, as the contract provided that the carrier should pay a just assessment of the damage, and have full benefit of any insurance effected on the goods.

The construction of the receipt, as a writing, was for the court, but it was to be considered with the other evidence, and the jury was so instructed. If the payment was a bona fide loan, outside and independent of any insurance matter, the amount should not be deducted. This was the plaintiff's contention, and it was what the receipt purported, but, if, as the defendant insisted, it was an adjustment of the loss, it was a payment which the carrier, under the insurance benefit clause, was entitled to have considered. This fact was properly left to the jury to determine. We do not think the cases of The Guiding Star, 53 Fed. Repr. 936, and The Propeller Monticello v. Mollison, 17 How. 152, are applicable to this one, as in neither case was there, as here, an agreement that the carrier should have the benefit of insurance effected by the owner. In Inman v. South Carolina Ry. Co., 129 U. S. 128, the money had not been in fact paid to the owner by the insurance company at the time of trial, so that in that issue it could not be determined how much should be credited, but the Supreme Court recognized such right after payment had been made by saying that " by its (bill of lading) terms the plaintiffs were not compelled to insure for the benefit of the railroad company, but if they had insurance at the time of the loss which they could make available to the carrier, or which before bringing suit against the company, they had collected without condition, then, if they had wrongfully refused to allow the carrier the benefit of the insurance, such a counterclaim might be sustained, otherwise not."

No contest between the two insurers is now before the court.

In Phœnix Ins. Co. v. Erie & Western Transporation Co., 117 U. S. 312, the controversy was between the insurance company and the carrier, and the question presented for decision was, whether the right of the shipper to recover against the carrier was not extinguished to the extent to which his loss had been paid by the insurer.  If so, subrogation must necessarily be refused, and it was refused for this reason.  In Providence Insurance Co. v. Morse, 150 U. S. 99, it was held that in case of loss the carrier is primarily liable to the shipper, and the position of insurer is substantially that of a surety.  The insurer can recover, after payment of a loss, by subrogation to the rights of the shipper, but upon no other ground; so that whatever amounts to an extinguishment of the rights of action of the shipper against the carrier must defeat the insurer's right to subrogation.

In Willock v. Penna. R. R. Co., 166 Pa. 184, the only question was, will the courts compel the performance of a contract between the shipper and carrier requiring the shipper to protect the carrier against the consequences of its own negligence? It was held· that the carrier could not compel the shipper to release it and stipulate for complete immunity from the consequences of the negligence and fraud of himself or his servants and employees, because it would be contrary to public policy.

The assignments of error are overruled and the judgment is affirmed.

*Errors assigned* were in not sustaining the assignments of error filed in the Superior Court.

*Horace L. Cheyney*, with him *John Frederick Lewis*, for appellant. ·

*Edwin Jaquett Sellers* and *David W. Sellers*, for appellee.

PER CURIAM, May 27, 1901 ⁚
This judgment is affirmed on the opinion of the Superior Court.   .