### PENNSYLVANIA R. CO. v. BURR et al.

(Circuit Court of Appeals, Second Circuit. April 5, 1904.)

#### No. 164.

1. SHIPPING—LIABILITY FOR DAMAGE TO CARGO—CONTRACT GIVING CARRIER BENEFIT OF INSURANCE.

A bill of lading provided that, in case of loss or injury of the goods, the damage should be adjusted on the basis of their value at the place and time of shipment, and that the carrier should have the benefit of any insurance effected by the shipper. He insured the goods for their value at the port of destination, but the policy contained a provision that in case of any agreement between the assured and any carrier whereby, in case of loss for which the carrier would be liable, he should have the benefit of the insurance, there should be no liability on the policy beyond the amount which was not recoverable from the carrier, and to make good the loss temporarily by advancing money pending delay in collecting from the carrier, which should not affect the final liability of the insurer. The goods were damaged in shipment, and the insurer advanced a sum to the owner; taking a receipt by which he agreed to prosecute his claim against

the carrier, and to refund to the insurer the amount collected. *Held*, that such advance was strictly within the terms of the policy, and did not constitute a payment of the loss, whereby the carrier could claim the benefit under the bill of lading as a set-off in an action by the owner to recover the damages.

2. SAME.

Where a bill of lading limited the liability of the carrier, in case of loss or damage, to the value of the goods at the time and place of shipment, a further provision that he should have the benefit of any insurance effected by the owner is valid only as to such insurance, or so much of the insurance as represents the goods, and the value for which, in case of loss, the carrier is liable; and he cannot claim the benefit of insurance covering the increased value of the goods at the port of destination, which the owner had the right to effect for his own protection.

In Error to the Circuit Court of the United States for the Southern District of New York.

This cause comes here upon writ of error to review a judgment of the Circuit Court, Southern District of New York, against plaintiff in error, who was defendant below. The judgment was entered upon a verdict directed by the court. The action was upon a bill of lading, to recover for injury to certain straw braid damaged by the carelessness of defendant during transportation from China to New York.

Henry G. Wood, for plaintiff in error.

Wilhelmus Mynderse, for defendants in error.

Before LACOMBE and TOWNSEND, Circuit Judges.

LACOMBE, Circuit Judge. The bill of lading contains the usual clause that in case of loss, either partial or total, damage shall be ascertained and adjusted on the basis of the cash value of the goods at the original port of shipment at the time of shipment, and the further clause:

"In case of loss or damage of any of the goods named in this bill of lading for which the [company] may be liable it is agreed and understood that it may have the benefit of any insurance effected by or on account of the said goods."

It was held in Phœnix Ins. Co. v. Erie Transportation Company, 117 U. S. 312, 6 Sup. Ct. 750, 29 L. Ed. 873, that such a clause is valid, and limits the right by way of subrogation of the insurer, upon paying to the assured the amount of a loss occasioned by the carrier's negligence, to recover over against the carrier.

The cash value at port of shipment was $9,569.30; the damaged value at New York was $4,820.44; verdict was directed for the difference, $4,748.86, with interest; and there is no dispute as to the correctness of the verdict, except that defendant claims the benefit of certain insurance. The sound value of the goods at New York was $11,537.20, and they were insured for that amount with the British & Foreign Marine Insurance Company. The amount due from the insurers to the insured was the difference between sound value and damaged value at New York, $6,716.76, and the sole question in the case is as to the effect of a certain clause in the policy, which reads as follows:

"In case any agreement be made or accepted by the assured with any carrier by which it is stipulated that such or any carrier shall have, in case of any

loss for which he may be liable, the benefit of this insurance, or exemption in any manner from responsibility grounded on the fact of this insurance, then and in that event the insurers shall be discharged of any liability for such loss hereunder, but this policy in these and all cases of loss or damage by perils insured against shall be liable and owe actual payment for (only) what cannot be collected from carrier * * * but also shall be chargeable with the direct pecuniary consequence to the assured temporarily arising from delay in collection from said carrier * * * and the advancing for this purpose only of funds to the assured for his protection pending such delay shall in no case be considered as affecting the question of the final liability of this insurance, and as soon as collection is made from the carrier the title of the insured to hold the funds so advanced by the insurer shall discontinue, and a portion thereof equal to the sum collected from the carrier shall be repaid to the insurer; but in case of final failure to collect from carrier, a portion of the sums advanced by the insurers equal to the sum short collected from the carrier may be retained and applied in settlement of the actual liability of this insurance thereby established (provided always the loss shall constitute in other respects a claim under this insurance)."

A somewhat similar clause was before the court in Inman v. South Carolina Ry. Co., 129 U. S. 128, 9 Sup. Ct. 249, 32 L. Ed. 612. The court said:

"By the terms [of the bill of lading] the plaintiffs were not compelled to insure for the benefit of the railroad company; but if they had insurance at the time of the loss, which they could make available to the carrier, or which, before bringing suit against the company, they had collected, without condition, then, if they had wrongfully refused to allow the carrier the benefit of the insurance, such a counterclaim might be sustained, but otherwise not. * * * Recovery upon neither of the policies could have been had except upon condition of resort over against the carrier, any act of the owners to defeat which operated to cancel the liability of the insurers. They could not, therefore, be made available for the benefit of the carrier. * * * Under the terms of these policies, payment itself would have been subject to such conditions as the companies chose to impose. * * * These insurers could require the owners to pursue the carrier in the first instance, and decline to indemnify them until the question and the measure of the latter's liability were determined."

Under this authority, unless the insurer has made an unconditional payment of the loss to the assured, the carrier cannot enforce any claim to benefit of the insurance.

On March 17, 1898, the insurance company gave to the plaintiffs $6,000, in receipt of the following agreement signed by them:

"In consideration of your advancing us the sum of $6,000 S. S. Belgic on the undermentioned goods we hereby agree to put forward a claim against the carrier in whose hands the same received damage and on receiving payment from them we undertake to refund you the same. It is further understood that you are to be responsible for all costs incurred in connection with the claim."

The defendant contends that this was really a payment of the loss under the policy, thus waiving the benefit of the clause, and reference is made to Roos v. Railroad Co., 199 Pa. 378, 49 Atl. 344. In that case an insurance company had insured $2,000 on property worth $4,200, and there had been a loss of $1,700. The amount of claim against the company was $809.50. That sum of money was turned over to the assured upon a written acknowledgment that it was "borrowed and received from the insurer, being a loan pending the investigation and determination whether the loss was one for which the carrier should

130 F.—54

be held liable; * * * and if the carrier should be held liable, the undersigned agrees to return the amount thus loaned, when and to the same extent same shall be recovered from the carrier." The court held that it was properly left to the jury to determine whether this was a bona fide loan, or an adjustment of the loss, and a finding that it was not a bona fide loan was sustained. What operated upon the jury's mind in that case, we do not know, but it may be noted that the report contains no statement of what the policy contained. Whether or not there was any clause providing for a loan, does not appear. In the case at bar we have only two written documents, and no other evidence bearing upon their construction. The one provides for the making of a loan under certain contingencies, and the other indicates that such loan is made. Unless we are prepared to hold, as we most emphatically are not, that the clause in the policy providing for a loan under the conditions therein specified is void, we can reach no other conclusion than that the $6,000 was turned over to the assured as a loan, and not as an adjustment.

The defendant further contends that the verdict is excessive, because the defendant was entitled to the benefit of the excess of insurance, $11,537.20, over the cash value of the goods at the port of shipment, $9,569.10, which was the extent of its liability, viz., $1,967.90. The assured could, at the utmost, recover against the carrier $9,569.10. To that extent only could the insurer be subrogated. But the assured would be entitled to recover $1,967.90 more from the insurer. That amount of insurance was good, and not discharged by any agreement with the carrier as to benefit of insurance. Therefore, as defendant contends, to that extent there was a payment of loss under the policy, and not a loan, and the carrier under bill of lading should have the benefit of it.

While technically the clause in the bill of lading may be open to such construction, we agree with plaintiff's counsel in the conclusion that, if it were thus construed, it would not, in the language of the opinion in Railroad Co. v. Lockwood, 11 Wall. 357, 21 L. Ed. 627, be "just and reasonable in the eye of the law," and would therefore be invalid. By refusing to respond in any event for more than the value at port of shipment, the carrier compelled the owner of the goods to take the risk of loss not only of all the profit he might have made, but also of freight and landing charges, and the value of all burdens and risks of the adventure. He seeks, as he is entitled to, to secure himself against such risk of loss by insuring his goods at their value here, with the additional items of increase included. In this way only can he secure complete reimbursement in case of loss. For example, in the case at bar, if he receives damaged value $4,820.44, carrier's liability $4,748.86, and insurer's liability $1,967.90, he gets back $11,537.20 —just sufficient to reimburse him the full value of the goods. In Inman v. South Carolina Railway, supra, the court held that, if a bill of lading contained a provision requiring the owners to insure for the carrier's benefit, such provision could not be sustained. When the carrier refuses to be itself liable for the destruction through its own negligence of part of the value of the goods it carries, it may fairly be held to have required a prudent owner to insure that part, and, if it be allowed it-

self to take the benefit of the insurance taken out on that part, the situation is the same as if it had required the insurance to be taken for its benefit. In our opinion, the clause in the bill of lading can only be sustained as to such insurance, or so much of the insurance, as represents the goods and the value for which in case of loss the carrier is to respond. If the assured is required to yield up to the carrier the insurance covering difference of value between port of shipment and port of discharge, the bill of lading by one clause "relieves the carrier from reimbursing the merchant for the full value of his goods, while an associated clause prevents the merchant from securing such reimbursement through the channels of insurance."

The judgment is affirmed.