IN THE MATTER OF EDGAR WOODS, GUARDIAN.

(*Nashville.* December Term, 1928.)

Opinion filed February 23, 1929.

T. G. Hinson, for complainant, appellant.

Louis Chambers, for defendant, appellee.

Mr. Chief Justice Green delivered the opinion of the Court.

This suit was brought by Mallie Woods, shortly after attaining his majority, to recover from an attorney-at-law a certain fund, the property of Mallie Woods, paid to his guardian during his minority, and alleged to have been lost and dissipated through the negligence of said attorney and overcharges by said attorney. There was a decree in favor of Woods by the Chancellor for part of the fund and this decree, for a somewhat reduced amount, was affirmed by the Court of Appeals. Both parties have filed petitions for *certiorari* which have been granted and the case has been argued here.

Woods was a son of Herschel Woods, who lived near Watertown in Wilson County. Shortly after Woods' birth in 1905, his mother died and his father removed to Cincinnati where he found employment with a railroad company. During the latter part of the year 1912 Herschel Woods, the father, was killed in an accident at Cincinnati. He had married again and his second wife and widow employed an attorney in Cincinnati to bring suit for damages against the railroad on account of her husband's death. There seems to have been some doubt as to whether the death happened under such circumstances as to render the railroad company liable, and the widow's attorney compromised the claim against the railroad company for $1750. The record indicates that the efforts of the widow's attorney procured this compromise and that it was a fair settlement, all things considered.

The family of Herschel Woods near Watertown learned of his death and employed the attorney herein to represent the interests of Mallie Woods, the only child of either marriage left by Herschel Woods. The attorney went to Cincinnati, investigated the matter and procured

another lawyer there to cooperate with him. It was found that when Herschel Woods obtained his marriage license, preparatory to his second marriage in Ohio, he represented himself as not having been married before. His Cincinnati wife knew nothing of his first marriage nor of the child he had left in Tennessee. It was necessary therefore for the Tennessee lawyer and his associate to make proof about the Tennessee marriage and the child, which they apparently did to the satisfaction of all parties at Cincinnati.

The $1750 collected by the widow's attorney seems to have been paid into the probate court at Cincinnati. That court allowed the widow's attorney a fee of $500, directed the payment of certain funeral expenses, and perhaps other expenses incident to the death of Herschel Woods, and divided the remainder of the fund between the widow of Herschel Woods and Mallie Woods, the child in Tennessee.

Under the advice of the attorney here involved, one Edgar Woods, an uncle of Mallie Woods, qualified as guardian of the latter in the county court of Wilson County. A copy of his credentials was presented to the probate court at Cincinnati and the child's part of the aforesaid fund was turned over to said attorney in the form of a check amounting to $541.33, payable to his guardian.

As appears from an order of the county court of Wilson County entered March 3, 1913, the guardian, Edgar Woods, and the attorney appeared in that court and offered the resignation of said guardian. The order recited that the court was of opinion it was best for the minor that said resignation be accepted and it was accepted and the guardianship terminated. It then appears from the order that said Edgar Woods, through the said

attorney, paid into that court the sum of $541.33, the entire fund collected on behalf of the minor.

A paper was offered in evidence in the form of a minute entry. This paper was found in a minute book of the Wilson County Court by the present clerk of that court. It, however, had never been entered on the minutes. The present clerk testified that the paper had been apparently written on an old typewriter in use in the office during the term of his predecessor. Other proof indicates that this order had been prepared for entry on the minutes of the county court and approved by the county judge but had failed of entry, perhaps by oversight.

The paper just referred to set out that Edgar Woods, guardian, and the attorney involved had entered into a contract whereby the attorney was to have one-half of any recovery secured by him for Mallie Woods on account of the death of the latter's father. It was then ordered that the clerk of the county court pay to said attorney the sum of $270.66. It is conceded by all parties that such payment was made by the clerk to said attorney. The paper mentioned further set out that Edgar Woods, guardian, had paid out for the minor some $12.25 and that said Edgar Woods should be allowed compensation of $25 and it was ordered that the clerk of the court pay to Edgar Woods the sum of $37.25. Edgar Woods denies that he received this $37.25 but a later minute entry indicates beyond doubt that such sum of $37.25 was paid out of the funds to someone.

Another minute entry of the county court of Wilson County on April 7, 1913, recites that there is a balance of said fund in said court amounting to $233.42. The order continues: "And it further appears that there is

an indebtedness against the estate of Herschel Woods, deceased, consisting of the following items, names, etc., to-wit.: An account due W. J. Enoch of $11; an account due Edgar Woods to the amount of $77, said items have been legally sworn to and is hereby ordered paid by the Court."

The order then directs the clerk to hold as a fee for the handling of the fund the sum of $10.82. It appears that this sum was paid to a young lawyer at Lebanon, not a party to this case. Thereupon said order of April 7, 1913, provided "this shows a net amount due said ward, Mallie Wood, of $134.60 same being a fund less then $150 and on motion . . . the name of Steven Welch has been suggested and recommended as a good and suitable man to pay this fund to, he being the step-father of said minor, to be expended for the care, protection, education, etc., for this minor child Mallie Woods, a boy about six years of age, and the court is pleased to grant said motion, and it is ordered and decreed that the Clerk will pay over the said sum of $134.60 to the said Steve Welch, etc., etc."

The payment to Steve Welch, as indicated, completed the distribution of the fund. Thus were the affairs of this minor administered in the county court of Wilson County and nothing further was done until this suit was brought after he reached his majority.

It should perhaps be stated in this connection that Steve Welch referred to in the order last mentioned was the step-grandfather of Mallie Woods instead of his step-father, as therein stated.

(1) The defendant attorney gives as a reason for paying this fund into the county court that he did not regard the bond of the guardian as strong. The statutes prescribe

the procedure that he should have followed under such circumstances, if the guardian was not able to give a better bond. Thompson's-Shannon's Code, secs. 3973-3974, 4320. These statutes were a part of chapter 141 of the Acts of 1851-52, were contained in the Code of 1858, and have appeared in every subsequent compilation of our statutes. It has been settled in Tennessee since *Bartee* v. *Tompkins,* 36 Tenn. (4 Sneed), 623, 645, decided in 1857, that a guardian could not resign and denude himself of his trust except by following the procedure indicated in said statutes securing the appointment of his successor and paying over to said successor the money and effects of the ward in the guardian's hands.

(2) The powers of the county court are altogether statutory and there is no general statute authorizing said court to receive from a guardian and the estate of his ward nor to undertake the distribution of said estate.

(3) The determination of the propriety of encroachment on the *corpus* of a minor's estate is regarded as one of the most delicate and responsible duties which devolves upon a court of chancery, and in the absence of a special statute, no other court in this State has any jurisdiction of the subject. *Mitchell* v. *Webb,* 70 Tenn. (2 Lea), 150.

The foregoing statements embody principles of law, settled for years, that should be familiar to every member of the profession.

(4) While an attorney does not guarantee the accuracy of all he does, he is bound to exercise reasonable skill and diligence in attending to business intrusted to his care and he is bound to possess such reasonable knowledge of well-settled rules of law as will enable him to perform the duties he undertakes. *Bills* v. *Polk,* 72 Tenn.

(4 Lea), 495; *Bruce* v. *Baxter*, 75 Tenn. (7 Lea), 477; *Read* v. *Patterson*, 79 Tenn. (11 Lea), 430; *Collier* v. *Pulliam*, 81 Tenn. (13 Lea), 114; *Hill* v. *Mynatt*, 59 S. W., 163.

"For loss to clients resulting from a want of proper knowledge of matters of law in common use, or of such plain and obvious principles as every lawyer is presumed to know, an attorney is liable, and he is usually held to be liable for the consequences of his ignorance or nonobservance of the rules of the courts in which he practices, or for his ignorance of the statutes and published decisions of his own State." 2 R. C. L., 1015.

For further authorities see cases colleected in Notes, 52 L. R. A., 883, and 34 American Decisions, 89, 92.

In the case before us the ward was a little boy between six and seven years old at the time his estate was dissipated. The guardian was an ignorant negro and both of them necessarily depended altogether on the advice of this attorney. One of the orders of the county court heretofore mentioned recites that defendant attorney himself paid this minor's money into that court.

Inasmuch as the county court was utterly without jurisdiction to receive and distribute this money, the case is just one where an attorney, holding himself out as possessing a reasonable knowledge of well-settled law, has paid or procured the payment of the fund of a client under disability to persons without authority, under well-settled law, to receive such fund. If the fund is lost under such circumstances, there can be no doubt of the liability of the attorney.

While we are of opinion, for the reasons stated; that the guardian who permitted his ward's estate to be distributed in this unlawful manner and the attorney who

directed such procedure are *prima-facie* liable to the ward for the full amount of said estate, nevertheless the record shows that certain portions of said fund were applied to the benefit of the ward, and in a court of equity, under the circumstances here appearing, the defendant should receive credit for such portion of said estate so applied.

(5) The situation is similar to one where a guardian has trenched on the principal of his ward's estate without previous authority of the Chancellor and comes into court asking approval of his acts. There has been some uncertainty in our decisions as to when, if ever, a guardian should be allowed expenditures made out of the *corpus* of his ward's estate, without previous permission of the chancery court. *Phillips* v. *Davis*, 34 Tenn. (2 Sneed), 520; *Beeler* v. *Dunn*, 40 Tenn. (3 Head), 87; *Roseborough* v. *Roseborough*, 62 Tenn. (3 Bax.), 314; *Cohen* v. *Shyer*, 1 Coop. Chy., 192; *Hobbs* v. *Harlan*, 78 Tenn. (10 Lea), 269; *Lenow* v. *Arrington*, 111 Tenn., 720.

The two cases last cited approved a rule suggested by Chancellor COOPER in *Cohen* v. *Shyer, supra,* that such proper expenditures would be allowed if a good reason was shown why application was not made to the court in advance. In *Hobbs* v. *Harlan,* it was said that urgent necessity would be regarded as a good excuse.

The services of an attorney were urgently needed in behalf of this ward. It was necessary that the relationship of the ward to his deceased father should be proven to the satisfaction of the Cincinnati court in order to permit the boy to realize anything from the recovery obtained on account of his father's death. The Chancellor and the Court of Appeals have concurred in finding that $100 was a reasonable fee to be paid the ward's attorney

for services in this connection. We agree to this and to the further allowance by the Court of Appeals of $70.66 apparently made on account of the expenses of the attorney's two trips to Cincinnati. We approve a credit of $170.66 to the attorney by way of fee and expenses.

The record further shows that the ward was reared by Steve Welch and wife—his step-grandfather and his grandmother. Steve Welch was the natural guardian of the ward. The proof indicates that Steve Welch was poor and needed help about clothing, feeding and bringing up the boy. We think the necessities of the case were sufficient to obtain the approval by a court of chancery of the payment of $134.60, balance on hand after the other payments, to Steve Welch for the benefit of the child. Credit will, therefore, be given to defendant attorney for this sum.

(6) It is insisted that the county court had authority to pay the $134.60 to Steve Welch, under Thompson's-Shannon's Code, sec. 4257a, which authorizes the courts of this State to pay over any fund in said courts belonging to a person under twenty-one years to the natural guardian of the minor for the latter's benefit when the fund is less than $150 and the minor is without regular or general guardian. We do not think this statute is in point. It refers to money properly in the particular court, not to money of which such court has no jurisdiction. The statute could not have application where the fund was reduced below $150 by the unlawful orders of the court. For the reasons previously stated, however, not because of this statute, such credit is allowed to the attorney.

Among payments made out of this fund, was one of $37.25 to Edgar Woods, guardian, by way of guardian's

fee and expenses. Edgar Woods says that he did not get this money. Whether he did, or not, is immaterial. He did nothing for which he was entitled to a fee in the first instance, and his misconduct would deny him compensation. As to the particular expenses allowed the guardian, it appears from the testimony of the defendant attorney that he paid those.

As to the three other payments ordered by the county court as appears from said order, two of them amounting to $88 appear to have been claims against the estate of Herschel Woods, the ward's father. Of course no such claims as these were chargeable to the ward's estate. The third payment of $10.82 was to an attorney at Lebanon for services in regard to this unlawful distribution of the ward's estate. There is no justification for taxing the ward with a fee for such service as this.

We are of opinion that defendant attorney is liable herein to Mallie Woods for $541.33 as of March 3, 1913, when this fund was paid into the county court of Wilson County but said liability is to be credited with $170.66 by way of fee and expenses to said attorney, and with $134.60, the amount paid to Steve Welch for the benefit of the minor. Judgment will be rendered against said attorney for the balance of $541.33, less said credits, with interest from March 3, 1913. The costs of the cause will be divided between the defendant attorney and Mallie Woods.