HARWOOD-YANCEY CO. *et al. v.* LAWRENCEBURG WAREHOUSE CO. *et al.*

*(Nashville,* December Term, 1933.)

Opinion filed December 15, 1933.

Jones & Wagstaff, of Pulaski, and Morrison & Morrison, of Lawrenceburg, for complainants.

A. A. Griffith, of Cullman, Alabama, and H. D. Derrick, of Lawrenceburg, for defendants Giles and others.

Wm. M. Hall, of Memphis, and H. D. Derrick, of Lawrenceburg, for U. S. F. & G. Co.

C. M. SMITHDEAL, of Dallas, Texas, and JOHN G. CREWS, of Lawrenceburg, for petitioner Striplin Cotton Co.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

The defendant Lawrenceburg Warehouse Company, a partnership, operated a public warehouse for the storage of cotton and was duly licensed under state and federal laws. The main suit was brought against defendant by the owners of cotton, deposited in the warehouse, which was destroyed by fire. Warehouse receipts issued to the complainants obligated defendant to keep the cotton fully insured. Complainants' cotton was fully insured, but the insurers resisted liability for the loss and the defendant made a settlement with such insurers. An amount was received in this settlement somewhat less than the value of the cotton and the face of the policies. This amount was distributed among the complainants, less certain expenses.

Complainants brought this suit to recover the sum of $4,409.24 and interest, said to be the difference between the value of their cotton and the amount received as above. The chancellor found that complainants had entered into a binding agreement with the defendant whereby they accepted the sum paid to them in full discharge of their claims. The Court of Appeals concurred in this finding of fact, and the complainants have filed a petition for *certiorari*.

An examination of the record discloses abundant evidence to sustain the finding of the lower courts upon this issue of fact, and their concurrent action is conclusive Code, section 10620.

■ It was urged in the Court of Appeals that the agreement above mentioned was made under duress, was without consideration, and was ineffective because not in writing. That court denied all these contentions, all of which are renewed in this court. We are not inclined to differ from the Court of Appeals in its rulings on these points.

■ Aside from the foregoing, however, the Court of Appeals found that the settlement made by defendant with the insurance companies was "a wise and profitable settlement." This finding is not specifically challenged in complainants' petition for *certiorari* and is well supported by the record. Among other things, it may be noted that this controversy with defendant's insurers was being waged during days of acute financial depression when insurance companies and other moneyed institutions were shaky. Shortly after the settlement was made, one of the insurance companies here involved, with which a policy of $7,000 was carried by defendant, went into a receivership. The record furthermore indicates that the resistance of liability for this loss by the insurance companies was not without some justification. Likewise the settlement made by defendant with the insurers appears to have been effected after advice and full consideration upon the part of defendant.

Such being the facts, the warehouse standing in the attitude of a trustee, with respect to this insurance, toward the owners of the cotton, we think the court may very well ratify the settlement made, as it might have authorized such settlement in the first instance. See *In re Woods,* 158 Tenn., 383, 13 S. W. (2d), 800, 62 A. L. R., 904, and cases cited.

The amount of insurance which the defendant carried on complainants' cotton was $32,500. In the settlement made the insurers paid defendant $28,500 and waived salvage amounting to $885. The total amount received by defendant on account of insurance, therefore, was $29,385. This sum was distributed among complainants, less some expenses, which the lower courts have found to be reasonable.

It is to be noted that complainants do not seek to charge the defendant in this suit as primarily liable for the value of the cotton destroyed. The defendant is sued on account of its obligation to keep the cotton fully insured or, more particularly stated, for breach of its duty with reference to the collection and distribution of insurance carried for the complainants' benefit.

Under the circumstances detailed, this court is unwilling to interfere with the agreement made between the defendant and the complainants, upheld by the chancellor and by the Court of Appeals, and complainants' petition for *certiorari* is denied.

Another controversy arises upon an intervening petition of W. D. Striplin filed herein, which petition was sustained by the chancellor but dismissed by the Court of Appeals.

One M. M. Striplin was the owner of forty-five bales of cotton deposited in defendant's warehouse for which negotiable warehouse receipts had been issued to him. This cotton appears to have been sold by M. M. Striplin to his brother, W. D. Striplin, of Corinth, Mississippi, trading as Striplin Cotton Company, and the warehouse receipts negotiated accordingly. At the time of this sale, M. M. Striplin mailed to the defendant a check for the amount of a statement rendered him and advised de-

fendant to "cancel all insurance on our cotton there as we have sold it to Striplin Cotton Company, Corinth, Mississippi." At the time this notice was received defendant was carrying $37,000 of insurance on the cotton in its warehouse, this amount being sufficient to cover M. M. Striplin's cotton as well as other cotton. Defendant canceled $4,500 of insurance after the notice came from M. M. Striplin, but did not notify W. D. Striplin, or Striplin Cotton Company, that such insurance had been canceled.

As heretofore stated, the warehouse receipts issued by defendant recited that "said cotton is fully insured by the undersigned warehouseman against loss or damage by fire or lightning." These receipts were negotiable in form, and section 7578 of the Code, defining the rights of a person to whom a negotiable receipt has been duly negotiated, provides that such person acquires (b) "the direct obligation of the warehouseman to hold possession of the goods for him according to the terms of the receipt as fully as if the warehouseman had contracted directly with him."

W. D. Striplin was not a party to the agreement between the other depositors and the defendant as to the distribution of the insurance fund and received no part of that fund. He insists that he had an interest in said fund, that he had no notice defendant was not carrying insurance on his cotton as provided in his warehouse receipts, and that defendant is liable to him for the value of his cotton said to be $3,542.40. W. D. Striplin has filed a petition for *certiorari* to review the action of the Court of Appeals in denying his claim.

The principal defense to this claim is that W. D. Striplin himself carried insurance on the cotton de-

stroyed and has been paid the value of such cotton by his insurer. In reply the intervener says that he carried a "buyer's transit policy" in the sum of $500,000 on all his cotton. That the money received by him from his insurer on account of the loss of this cotton was merely an advance or loan, to be repaid to his insurer out of money due him from defendant when collected, and that his policy did not cover the cotton in defendant's warehouse.

The policy above mentioned carried by W. D. Striplin excluded from coverage:

"Cotton for which any carrier or other bailee is liable, nor cotton under bills of lading or storage receipts that give the carrier, warehouseman or other bailee the benefit of any insurance thereon, nor cotton on which any carrier or other bailee has insurance which would attach if this policy had not been issued, or insurance which would under any circumstances inure to the benefit of the assured hereunder."

The policy also provided upon conditions named, in the event of loss, that the insurer would "advance as a loan to the assured the amount of such loss or damage repayable only to the extent of any recovery from such carrier or bailee."

After the destruction of his cotton aforesaid, W. D. Striplin received a sum of money equivalent to its value from his general insurer. This sum of money was paid to W. D. Striplin in pursuance of a written obligation on his part to treat said sum as a loan to be repaid, however, only upon the collection by him of damages for the loss of hs cotton from defendant. This paper writing also contained an assignment to his insurer of the intervener's claim against defendant and agreement on inter-

vener's part to make claim against defendant for the loss of the cotton and, in the event of failure to promptly collect to enter suit for said claim against said defendant and to conduct said suit under the direction and advice of the insurer.

We think the Court of Appeals properly dismissed the intervening petition of W. D. Striplin upon authority of *Lancaster Mills* v. *Merchants' Cotton-Press Co.*, 89 Tenn., 1, 14 S. W., 317, 331, 24 Am. St. Rep., 586, and *Deming & Co.* v. *Merchants' Cotton-Press Co.*, 90 Tenn., 306, 17 S. W., 89, 13 L. R. A., 518.

The situation presented in those cases was this: The defendant had undertaken to keep the cotton fully insured. This agreement was breached. The cotton was destroyed by fire. The owners of the cotton, carrying general policies on all their cotton, received from their insurers amounts equivalent to their losses; these sums being received under the guise or form of loans as here. This court treated the loans as payments by the owners' general insurers and pointed out that the defendants in those cases were not liable primarily for the destruction of the cotton but were only liable for a breach of their contract to insure the cotton. It was said:

"As the assured did for itself just what the compress company agreed to do for it, and having no right of action save for premiums, its insurer, who has paid the loss, has none." *Lancaster Mills* v. *Merchants' Cotton-Press Co., supra.*

A like conclusion was reached in *Deming* v. *Merchants' Cotton-Press Co., supra.*

██ ██ While the court in those cases treated the so-called loans by the owners' insurers as payments, it does not seem to be material whether the action of the inter-

vener's insurer here in placing in the owner's hands a sum of money equivalent to the loss be treated as a payment or as a loan. There was to be no repayment by the owner to the insurer unless there was recovery from the warehouse company. The intervener had no right of action against the warehouse company for the value of the goods. His right of action was for a breach of contract on the part of the latter to insure the cotton. For such breach the warehouse company was liable for damage sustained by the intervener. He has sustained no damage except the cost of the premium on the policy issued by his general insurer. As long as he retains the sum of mone received from his insurer, the intervener has no right of action against the warehouse company for lack of insurance. There is then, as said in the previous decisions, no right of action to which the intervener's insurer could be subrogated, save a suit for the amount of the premium aforesaid.

We do not regard *Luckenbach* v. *McCahan Sugar Refining Co.*, 248 U. S., 139, 39 S. Ct., 53, 54, 63 L. Ed., 170, 1 A. L. R., 1522, as in conflict with the former decisions of this court. In that case there was a primary liability on the part of the carrier for the value of goods lost through its negligence. By a stipulation in the bill of lading the carrier undertook to reserve unto itself the benefit of any insurance effected by the shipper. Under such circumstances the general insurer of the shipper made the latter a loan equivalent to the value of the goods lost. It was held in substance that the insurer might prosecute an action in the shipper's name against the carrier for the loss.

The insurance policy carried by the shipper and con-

sidered in *Luckenbach* v. *McCahan Sugar Refining Co.* contained this provision:

"Warranted by the assured free from any liability for merchandise in the possession of any carrier or other bailee, who may be liable for any loss or damage thereto; and for merchandise shipped under a bill of lading containing a stipulation that the carrier may have the benefit of any insurance thereon."

It is to be noted that the policy carried by the intervener herein binds the insurer to make an advance or loan even though the cotton destroyed be cotton for which a carrier or other bailee is liable, and it is to be noted that the warehouse receipts herein did not reserve to the defendant the benefit of any insurance effected by the intervener.

In the course of the discussion in *Luckenbach* v. *McCahan Sugar Refining Co., supra,* the court said:

"Agreements of this nature have been a common practice in business for many years. *Pennsylvania R. Co.* v. *Burr,* 65 C. C. A., 331, 130 F., 847; *Bradley* v. *Lehigh Valley R. Co.,* 82 C. C. A., 426, 153 F., 350. It is clear that if valid and enforced according to their terms, they accomplish the desired purpose. They supply the shipper promptly with money to the full extent of the indemnity or compensation to which he is entitled on account of the loss; and they preserve to the insurers the claim against the carrier to which by the general law of insurance, independently of special agreement, they would become subrogated upon payment by them of the loss. The carrier insists that the transaction, while in terms a loan, is in substance a payment of insurance; that he treat it as if it were a loan is to follow the letter of the agreement and to disregard the actual facts; and that to give it effect

as a loan is to sanction fiction and subterfuge. But no good reason appears either for questioning its legality or for denying its effect. The shipper is under no obligation to the carrier to take out insurance on the cargo; and the freight rate is the same whether he does or does not insure. The general law does not give the carrier, upon payment of the shipper's claim, a right by subrogation against the insurers. The insurer has, on the other hand, by the general law, a right of subrogation against the carrier. Such claims, like tangible salvage, are elements which enter into the calculations of actuaries in fixing insurance rates; and, at least in the mutual companies, the insured gets some benefit from amounts realized therefrom. It is essential to the performance of the insurer's service, that the insured be promptly put in funds, so that his business may be continued without embarrassment. Unless this is provided for, credits which are commonly issued against drafts or notes with bills of lading attached, would not be granted.''

In *Luckenbach* v. *McCahan Sugar Refining Co.*, the carrier, under a primary obligation for the loss of the goods, sought to escape that primary obligation by the device of inserting into its bill of lading a provision that it should have the benefit of any insurance effected. To meet this effort of the carrier, to keep the primary liability where the law placed it, the insurer adopted the loan device approved by the court. The decision of the Supreme Court sanctioned this effort of the insurer and the decision seems to rest largely on grounds of policy.

As heretofore pointed out, the situation of the parties in the case before us and the nature and order of their liabilities are altogether different.

We do not regard *Luckenbach* v. *McCahan Sugar Re-*

*fining Company* as a construction of any federal statute regulating the liabilities of a warehouseman. We find no conflict between that decision and the previous decisions of this court. Moreover, the liability of a warehouse-man under the federal statute seems to be largely measured by the law of the state in which that warehouse is located. U. S. C., title 7, sec. 247 (7 U. S. C. A., sec. 247).

For the reasons stated, and upon authority of our previous decisions, Striplin's petition for *certiorari* is likewise denied.