POE *v.* FETZER *et al.*

(*Knoxville*, September Term, 1942.)

Opinion filed January 9, 1943.

588

MAYFIELD & MAYFIELD, of Cleveland, for appellants.

JOHN C. PRINCE, of Benton, and R. A. DAVIS, of Athens, for appellees.

MR. JUSTICE PREWITT delivered the opinion of the Court.

The bill herein was dismissed by the chancellor upon certain grounds of the demurrer of the defendants, J. J. and Luke L. Fetzer.

The complainant perfected an appeal, and J. J. Fetzer and Luke L. Fetzer have filed the record for error and assigned error on the writ.

James D. Fetzer is a person of unsound mind and has been for many years. The original bill sets out that said incompetent was so adjudged on July 10, 1924, and that his father, H. A. Fetzer, was duly appointed his regular guardian and entered into bond as such. That on December 11, 1926, the bond was increased, and the said guardian gave a new bond in the sum of $4,000 with Luke L. Fetzer, J. J. Fetzer and Mrs. M. L. Fetzer as

sureties. That on February 8, 1930, the bond was increased to $5,500, and that said guardian gave a new bond in that amount with the same sureties, to wit: L. L. Fetzer (the same as Luke L. Fetzer), J. J. Fetzer and Mrs. H. A. Fetzer, the latter being the same as Mrs. M. L. Fetzer.

The original bill further states that on or about November 14, 1931, the guardian, H. A. Fetzer, resigned as such, and the original complainant in the instant bill, Lucile Poe, was appointed to succeed him. That the former guardian, H. A. Fetzer, did not have the ward's money as required by law, but gave the new guardian, Lucile Poe, with the full knowledge and consent of the sureties on the bond, a note for $2,832.59, dated November 14, 1931, and due four years after date. That at the same time this note was given the said H. A. Fetzer and his wife, M. L. Fetzer (one of the sureties on his bond), gave a deed of trust on some land to secure the payment of the note. It seems that there was no court approval of this action. The old guardian, H. A. Fetzer, paid nothing on the note and thereafter died insolvent, and the present guardian was unable to collect anything. The new guardian then advertised the land in compliance with the terms of the deed of trust and same was sold on August 2, 1940, and the new guardian bid the property in as guardian for her ward for $1,500, and, after deducting the expenses, the note was credited with $1,446. It seems that at the time of the filing of the bill there remained an unpaid balance on the note of more than $2,900.

The suit was brought to recover from the sureties the difference in the amount actually paid and the amount their principal owed the incompetent's estate.

The suit was originally brought by Lucile Poe as guardian, but later was amended by permission of the court so as to make the incompetent himself, by next friend, the complainant, and the court ordered the amendment made so as to pray for all the relief in the name of the incompetent.

It was further stated in the bill that the sureties, J. J. and L. L. Fetzer, had both filed petitions in bankruptcy, but that both had failed to list this liability and that they were not discharged as to it. The bill further set out that Mrs. M. L. Fetzer was dead and that she died intestate and insolvent, but that she owned a valuable farm which was under a deed of trust to secure certain indebtedness owing by her to the Cleveland Bank and Trust Company of about $2,000. This amount was conceded to be a prior lien. Complainant prayed for a judgment against her estate and J. J. and L. L. Fetzer for the deficit. All the children and heirs at law of Mrs. Fetzer and the Bank were made defendants.

The administrator of the estate of Mrs. M. L. Fetzer and the other two sureties, J. J. Fetzer and L. L. Fetzer, filed a demurrer to the bill on several grounds. The demurrer was overruled by the chancellor, except the grounds of the demurrer based on the action of the present guardian in accepting the note of the former guardian and their principal, and that this worked a novation and discharge of the sureties on his bond; and second, that the sureties on the bond of a guardian are liable in inverse order on the execution of the principal's bond, and that the complainant could not proceed against them until she had first exhausted her remedy against her own sureties.

The chancellor overruled the demurrer which challenged the bill on the ground that the Statute of Limita-

tions of six years had run. This latter action by the chancellor is brought before us by the filing of the record for writ of error.

█ The first point to be considered is whether or not the chancellor was in error in holding that there was a novation.

Here we find that when the new guardian qualified the resigning guardian was in default in the sum of $2,832.59, and the new guardian by mistake or error accepted a note and trust deed from the retiring guardian without the approval of the court in any respect. The bill states that this transaction was entered into with the full knowledge and consent of the present defendants who are resisting liability for a shortage which had admittedly occurred when their contracts were in full force. From this note and mortgage the new guardian has realized between $1,400 and $1,500. For the purposes of this cause we assume that the guardian was acting in good faith and seeking to recover what she could from the old sureties.

In *Dies* v. *Wilson County Bank,* 129 Tenn., 89, 96, 165 S. W., 248, 250, Ann. Cas., 1915A, 1090, this Court said:

"The intention of the obligor that the existing debt should be discharged by the new obligation must be concurred in by both debtor and creditor; and where the intention is shown, as in the case at bar, to have been to the contrary, it seems clear that neither novation not payment resulted."

It could hardly be said that the resigning guardian intended that this debt to his ward be fully paid by a note with security worth less than fifty cents on the dollar. Evidently the retiring guardian hoped to pay the note in the four years provided for. The sureties were fully aware of the note and mortgage, and evidently knew

there was a considerable loss to the ward at the time the transaction was entered into.

In *re Woods,* 158 Tenn., 383, 389, 13 S. W. (2d), 800, 802, 62 A. L. R., 904, it was said: "It has been settled in Tennessee since *Bartee* v. *Tompkins,* 36 Tenn. (4 Sneed), 623, 645, decided in 1857, that a guardian could not resign and denude himself of his trust, except by following the procedure indicated in said statutes, securing the appointment of his successor, and paying over to said successor the money and effects of the ward in the guardian's hands."

We therefore think that the new guardian, taking the note from the old guardian, a close relative and under such circumstances as existed here, did not work a novation.

▉ It is next insisted that the new sureties are first liable on their bond, and that the sureties are liable in their inverse order. We think this is true where there are different sureties on different bonds of the same guardian. Here the shortage was clearly under the sureties on the bond of the resigning guardian. Our cases are collected under Notes to section 8483 of Williams Code.

While the present guardian's conduct in taking over and accepting the note and mortgage in question was irregular, yet where it appears that the loss occurred under the resigning guardian, wo do not think that the sureties of the present guardian are primarily liable, if at all, for the defalcations of the former guardian.

▉ It is next insisted that the chancellor was in error in holding that the Statute of Limitations did not apply, and that this was a suit in reality by the guardian and the right of action was barred as to him after six years. This contention would be sound were it not for the fact

that the chancellor allowed an amendment so as to bring the suit in the name of the incompetent by complainant as next friend.

It has been held that although a guardian's suit is barred, the ward may maintain a suit for his distributive share if brought within the saving period of the Statute of Limitations after his majority has been reached. *Alvis* v. *Oglesby,* 87 Tenn., 172, 10 S. W., 313; *Henley* v. *Robb,* 86 Tenn., 474, 7 S. W., 190.

We therefore find no error in the decree of the chancellor in holding that the Statute of Limitations did not apply, but we are constrained to hold that he was in error in finding that there was a novation and that the sureties must be sued in their inverse order.

It results that the decree of the chancellor will be reversed and the cause remanded.